## BANNING v. PENROSE.

(District Court, N. D. Georgia, N. D.   January 13, 1919.)

1. ALIENS ⊚—68—NATURALIZATION—COMPLIANCE WITH STATUTE.

Where a native of Germany, as shown by the record of his naturalization, renounced allegiance to every foreign potentate, state, or sovereignty, and particularly to the Emperor of Germany, that was a substantial compliance with Rev. St. § 2165, though the Emperor's name was not given.

2. CITIZENS ⊚—13—EXPATRIATION.

A naturalized citizen who returns to the country of his origin does not lose his citizenship, though he remains there indefinitely, if his purpose be to return to the land of his adoption; the test being one of intention.

3. CITIZENS ⊚—13—EXPATRIATION.

Where a native of Germany, after becoming naturalized, returned to the land of his nativity, *held*, that his indefinite stay did not work an expatriation so as to deprive him of his rights as an American citizen on his return.

4. HABEAS CORPUS ⊚—25(1)—ALIEN ENEMIES—INTERNMENT.

A duly naturalized citizen who has not lost his rights, if arrested as an enemy alien on Presidential warrant issued under Rev. St. § 4067, as amended by Act April 16, 1918 (Comp. St. 1918, § 7615), is entitled to be discharged on habeas corpus.

At Law.   Petition by C. F. Banning for writ of habeas corpus against C. W. Penrose, Commandant of Ft. Oglethorpe, Ga.   Writ issued, and petitioner ordered discharged.

Richard W. Martin, of Pittsburgh, Pa., and J. A. Branch and William Schley Howard, both of Atlanta, Ga., for petitioner.

Hooper Alexander, U. S. Atty., of Atlanta, Ga., for respondent.

NEWMAN, District Judge.   This is a proceeding by C. F. Banning against C. W. Penrose, who is commandant of Ft. Oglethorpe, Ga., a military encampment.   Mr. Banning asks that, on a writ of habeas corpus, he be discharged from his detention and confinement at Ft. Oglethorpe, where he was interned, as I understand it, by an order of the Attorney General, acting for the President, under section 4067, Rev. St., as amended by the Act of Congress approved April 16, 1918, 40 Stat. L. 531, c. 55 (Comp. St. 1918, § 7615), and the President's proclamation issued thereunder.

There has been a hearing on the petition, considerable evidence taken, and a lengthy argument.   It is conceded at the outset that the acts above referred to are constitutional acts, and that the proclamation of the President was properly issued in pursuance thereof.   No question is made as to the right to do this, if it was directed toward an alien enemy.

⊚—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At the time of his arrest and confinement at Ft. Oglethorpe, Banning was residing in the city of Pittsburgh, Pa. He is a bachelor, but he had rooms there and was staying there at the time, and had been for some time in that city.

[1] It appears that Banning, while working in New York City, in 1884, filed his declaration of intention to become a naturalized citizen of the United States. After that he went to Pittsburgh, where he worked for a firm called Naylor & Co., and in 1899 he and another employé of the firm of Naylor & Co., S. G. Cooper, formed a limited partnership under the name of Banning, Cooper & Co., Limited, and engaged in some kind of a brokerage business. In 1903 he applied to a state court in Pittsburgh, the court of common pleas, for naturalization, and was naturalized and received a certificate. The respondent here does not question at all the fact that he applied for naturalization, went through the form of naturalization, and received a certificate; but the act of Congress on the subject of naturalization (Rev. St. § 2165) provided that—

An applicant for naturalization "shall, at the time of his application to be admitted, declare, on oath, before some one of the courts above specified, that he will support the Constitution of the United States, and that he absolutely and entirely renounces and abjures all allegiance and fidelity to every foreign prince, potentate, state, or sovereignty; and, particularly, by name, to the prince, potentate, state, or sovereignty of which he was before a citizen or subject."

The United States attorney, in his brief which I have before me, says:

"I assume, therefore, that the court will give no consideration to any question or suggestion whatever except this: Is Mr. Banning an American citizen or an alien enemy within the classes named in R. S. 4067?"

I agree thoroughly with the United States attorney in his suggestion about this; that the only thing for the court to consider in this case is whether or not Mr. Banning, at the time of his arrest and internment, was an alien enemy or a citizen of the United States. If he was regularly naturalized and has not expatriated himself, then he is not an alien enemy, but a citizen, although a naturalized citizen, only.

Mr. Banning, in his naturalization, as shown by the records of the same, renounced all allegiance and fidelity to every foreign prince, potentate, state, or sovereignty, and particularly to the Emperor of Germany. The United States attorney contends that this renouncing of his allegiance to the Emperor of Germany is not sufficient, that he should give the name of the sovereign of the country of which he was a subject, or the name of the sovereign whose subject he was, to state it more correctly.

I have thought about this question considerably and have examined it pretty thoroughly and carefully, and my own reasoning and the authorities which impress me as the most important satisfy me that the act of Banning in renouncing allegiance to the German Emperor, as he did, is substantially sufficient. In renouncing his allegiance to the German Emperor, he clearly indicates the country with which he was severing his relations and leaving in order to take citizenship in

this country. It seems to me that the purpose and requirements of the act are very clearly complied with in a way which ought to be sufficient.

I have a case before me on this subject, Ex parte Smith, an Alien, 8 Blackf. (Ind.) 395, which is a decision by the Supreme Court of Indiana and is very brief. It is this:

"The declaration is objected to, because the party, in declaring his intention to renounce his allegiance to the queen of Great Britain and Ireland, does not give the name of the queen, viz., Victoria. We do not think the objection should prevail. The meaning of the declaration is the same as if the name of the queen had been inserted. The party by declaring his intention to renounce all allegiance and fidelity to every foreign prince, potentate, state, and sovereignty whatever, and particularly to the queen of Great Britain and Ireland, has complied substantially with the act of Congress on the subject."

This is the view I take of the matter here. It is, at least, a substantial compliance with the act and should be deemed sufficient. See, also, In re Denny (D. C.) 240 Fed. 845; In re Markowitz (D. C.) 233 Fed. 715; and United States v. Salomon, 231 Fed. 928, 146 C. C. A. 124.

[2, 3] The United States attorney also insists that, even if Banning was properly naturalized, he afterwards expatriated himself by his conduct in going to Germany and residing there some time, in Berlin. The authorities all are (and it would be useless to refer specifically to them) that a man who has become a naturalized citizen of one country, and goes back to the country of his origin, may stay there indefinitely, if his purpose is, all the time, in his mind, to retain his citizenship in the country of his adoption and to return there some time in the future. It is a question more of intention than anything else. That is the law as contained in all the decisions and the state papers read by counsel in this argument. Of course, various questions arise as to how his intention can be shown and in what way it can be shown.

I do not think there is anything in this case to show clearly that Mr. Banning ever intended not returning to the United States. On the contrary, every part of the evidence, which I will not undertake to go into in detail, and some of it very strongly, indicates that his intention was to retain his home in the country of his adoption. The evidence very clearly shows that Banning had an old father in Germany to whom he was devoted and whom he desired frequently to visit, and this seems to have been very largely the motive which actuated him in going over there, while from his own evidence it is clear that he enjoyed the life of Berlin and had rooms, as if expecting to remain there a while.

Believing that he was regularly naturalized, the evidence that he intended to take up a permanent residence in Germany should be reasonably clear. It is not so here. There are some things in the evidence, to which the United States attorney has referred, which give ground for argument that his purpose was otherwise; but I do not see how, taking all the evidence together, any conclusion can be reached which would show expatriation on his part. His using Berlin as his place of residence at other times, under other circumstances, is rather against his contention; but it is a circumstance which is readily

255 F.—11

explained by his using that during the time he was over in Germany as "an address" more than anything else.

[4] The United States attorney stated several times in argument that if the evidence showed that Mr. Banning was a citizen at the time of his arrest and confinement at Ft. Oglethorpe, and not within the classes named in section 4067 of the Revised Statutes, he ought to be discharged. He is clearly correct in that, and I being of the opinion that he was a naturalized citizen at the time of his arrest, then he is entitled to an order on this writ of habeas corpus for his discharge, and an order may be taken to that effect.