**NURGE v. MILLER, Alien Property Custodian, et al.**

(District Court, E. D. New York. March 16, 1923).

1. **Citizens ⊕⇒10—Burden on naturalized citizen to overcome presumption of expatriation by foreign residence, and mere return not sufficient.**

Where a citizen by naturalization has resided in the foreign state from which he originally came for more than two years, the burden is on him to overcome the presumption that he ceased to be an American citizen, as provided by Act March 2, 1907, § 2 (Comp. St. § 3959), and the mere fact of his return is not sufficient to overcome that presumption.

2. **Citizens ⊕⇒10—Evidence held to rebut presumption of expatriation by residence in Germany of naturalized alien.**

Where plaintiff, a naturalized alien, returned to Germany in 1909 for an intended visit, but prolonged his visit until the outbreak of war made his return difficult, dangerous, and finally impossible until after the Armistice, evidence as to his property interests in the United States, his refusal to dispose of his home here, his refraining from giving aid or comfort to the German cause, the circumstance that his age precluded his liability to military service, and other circumstances *held* to overcome the presumption of expatriation under Act March 2, 1907, § 2 (Comp. St. § 3959), and to warrant a finding that he did not cease to become a citizen, and was entitled to the return of his property seized by the Alien Property Custodian.

At Law. Suit by Ernest Nurge against Thomas W. Miller as Alien Property Custodian, and another, to recover property seized under the Trading with the Enemy Act. Decree for plaintiff.

George L. Stamm, of New York City (Louis R. Bick, of Brooklyn, of counsel), for plaintiff.

Dean H. Stanley, Sp. Asst. Atty. Gen., for defendants.

CAMPBELL, District Judge. This is a suit brought under section 9 of the Trading with the Enemy Act, as amended (41 Stat. 977), to recover certain property seized by the Alien Property Custodian under the provisions of that act. The question involved in this suit is not one of wrongful seizure of property by the Alien Property Custodian, because, under the provisions of section 2 of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½aa), the plaintiff herein was unquestionably an enemy at the time the property was seized. The question is whether, under the provisions of the amendment to the Trading with the Enemy Act of June 5, 1920, the plaintiff is entitled to secure the return of the property seized, regardless of his enemy character.

The plaintiff came to the United States in 1870. In 1873 he moved from New York to East Williamsburgh, Queens county, and there he established himself as a farmer. In 1877 he declared his intention of becoming a United States citizen, and on July 30, 1888, consummated that intention and obtained a certificate of naturalization from the City Court of Brooklyn. Plaintiff's first wife died in 1906, and in 1907 he went to Germany on a short trip. After his return to the United States, the woman who is his present wife came to the United

States, and they were married in 1908. The present wife was a German citizen before she married the plaintiff.

Shortly after the second marriage of the plaintiff, his wife became homesick for her father in Germany, and wanted to go back for a visit. She continued importuning the plaintiff, and he finally consented, and they returned to Germany in 1909 on a visit, with the intention of staying for some period less than a year. The plaintiff had a brother and sister in this country who had children, and had a sister in Germany who also had children. Before leaving, the plaintiff executed a power of attorney to one Gustav Schumacher, to whom he intrusted the entire direction of his affairs in the United States. He did not dispose of the home which he had occupied for a long time in the United States, but the same was rented to a niece, who was then married and living with her husband, but who had formerly lived with the plaintiff.

That plaintiff then intended to return to the United States I think is clearly shown, and that he still intended to return in 1910 is shown by the fact that he saw Mr. Schumacher, who was on a visit to Germany in that year, and told him that he expected shortly to return. From that time on the plaintiff says that he intended to return and to preserve his American citizenship. This is not contradicted by any witnesses. He says that, when he found that war had been declared in 1914, he started to make arrangements to return, and wrote to the Hamburg-American Line relative to passage to the United States, but that just before the time he was going to secure the passage he heard that the ship on which they were to sail had passed a mine, and that thereafter he was afraid to come back. In this he is corroborated by his wife. Mr. Schumacher wrote the plaintiff, some time after the outbreak of the war, and advised him to remain in Germany, setting forth his belief that, if the plaintiff attempted to return he might be captured by the English and interned.

Plaintiff remained in Germany. He testified that, at or about the time this country entered the war, he attempted to come back, but was unable to do so, and that as soon as possible after the Armistice he again attempted to return, but was informed that they would require passports; that he made endeavors to obtain the same, but was not finally able to get back to this country until 1920; that some long time after he had made the application for his passports, and before he was able to obtain them and return, he had received word that his property had been taken over by the Alien Property Custodian.

It appears from the testimony that the plaintiff did not remove any of his property from this country to Germany, except a sum of between $4,000 and $5,000, which he took with him when he started on the trip. It also appears that the plaintiff purchased a house while in Germany, and that that house still remains his property, because, as he said, he could not sell it. The reason given for purchasing this house was that the plaintiff was unable to rent a house, and that, other persons having come in, there was no room in the house of his father-in-law, and therefore, in order for his wife and himself to remain

near his father-in-law, who was old and sick, it was necessary to purchase the house.

In all of these statements the plaintiff is corroborated by his wife, and while I am unable to determine whether the plaintiff through ignorance or design denied having property in Germany, whereas he owned the house in question, and would therefore not accord the same weight to his testimony that I would, had he stated this fact on his examination, still I must give full faith and credit to the testimony of his wife, who told the story and gave the information with reference to the ownership of the said house in Germany, and from her testimony it appears, in corroboration of that given by the plaintiff, that at the time this country entered the war an inquiry was made of the plaintiff, by a gendarme in Germany, as to his nationality, and the plaintiff then claimed to be a citizen of the United States.

Upon all the evidence I therefore believe that this plaintiff always intended to be and remain while in Germany a citizen of the United States, and it is to be borne in mind that by the uncontradicted testimony of plaintiff he rendered no aid or comfort to the enemies of the United States, nor did he purchase German bonds or in any way attempt to contribute to the success of the German arms. I agree with the government that the mere return of the plaintiff was not sufficient, standing by itself, to show that he always intended to retain and had not forsaken his American citizenship; and I further agree with the government that the burden was on the plaintiff to show his intention of remaining a citizen of the United States during all the time he was absent from this country and in Germany, and that he still has that intention.

While it might be said, and properly said, standing by itself, that the purchase of the house in Germany was presumptive of an intent to establish himself there, still that presumption, it seems to me, is clearly rebutted by the fact that he never disposed of his residence in this country, but retained it, renting the same to a member of the family, and that he sought out that place as his abode when he returned to this country and further by the fact that, when war was declared between the United States and the German Empire, he then, being in Germany, declared himself a citizen of the United States, and retained that character in the enemy's country during the continuance of the war.

[1] As the plaintiff was over 70 years of age, he surely did not remain in Germany to escape military service in this country. The plaintiff having resided in Germany, the foreign state from which he originally came, for more than two years, the burden is upon him to overcome the presumption that he ceased to be an American citizen, as provided by the Act of March 2, 1907 (34 Stat. 1228, 4 Comp. Stat. 1916, p. 4832), the portion of which statute particularly relevant to the case at bar being section 2, and I do not think that the mere fact of his return is sufficient to overcome that presumption, notwithstanding the holding of the Attorney General to that effect in his Opinion to the Secretary of Commerce and Labor on December 1, 1910, 28 Opinions, 504. See Mackenzie v. Hare, 239 U. S. 299, 36 Sup. Ct. 106, 60

L. Ed. 297, Ann. Cas. 1916E, 645; U. S. ex rel. Anderson v. Howe (D. C.) 231 Fed. 546; Sinjen v. Miller (D. C.) 281 Fed. 889.

[2] I have, however, examined all of the cases cited and believe that the presumption may be, and in the case at bar has been, overcome by the return of the plaintiff and the proof of his intention during all of his absence to remain a citizen of the United States. U. S. ex rel. Anderson v. Howe, supra; Stein v. Fleischmann Co. (D. C.) 237 Fed. 679; In re Wildberger (D. C.) 214 Fed. 508; Banning v. Penrose (D. C.) 255 Fed. 159.

Judgment is therefore granted to the plaintiff as prayed for in his complaint, but without costs.