UNITED STATES of America,
Plaintiff,

v.

Manlio CUCCARO, Defendant.

Civ. No. 8853.

United States District Court
E. D. New York.

March 1, 1956.

---

Leonard P. Moore, U. S. Atty., for Eastern Dist. of New York, Brooklyn, N. Y., by Margaret E. Millus, Asst. U. S. Atty., Brooklyn, N. Y., for plaintiff.

Joseph J. Blank, New York City, by Edward L. Dubroff, Brooklyn, N. Y., of counsel, for defendant.

BYERS, District Judge.

The Government seeks to cancel defendant's naturalization certificate No. 2,896,447 granted in this court on January 22, 1929.

The facts involved are not substantially controverted, and can be chronologically summarized thus:

The defendant was born in Italy May 16, 1889 and came to this country in 1909 under an Italian passport.

March, 1915—Returned to Italy to enter Military Service, under direction of the Italian consul in New York City, that he was subject thereto.

He entered such service and so continued until the end of 1919. He did not return to this country, however, for more than four years.

1924—Defendant being a steward on the Italian ship Duilio, jumped ship at the end of his second voyage, that is, he had no passport bearing a visa.

On July 18, 1924 the defendant filed a declaration of intention to become a citizen of the United States of America.

1927—November 22, 1927 the defendant went back to Italy to get married; that purpose was there effected on February 18, 1928, and on July 13, 1928 he returned alone to this country.

1928—On October 18, 1928 defendant filed and verified his petition for naturalization in this court. The fact of marriage and the name of the wife of petitioner appear therein.

1929—January 22, 1929, an order was entered granting the said petition.

That petition recited in part:

"I have resided continuously in the United States of America for the term of five years at least immediately preceding the date of this petition, to wit, since the ———— day of January A.D. 1909, and in the State of New York, continuously next preceding the date of this petition, 22 day of January A.D. 1909, being a residence within this State of at least one year next preceding the date of ————."

The period of five years preceding the date of the petition began October 18, 1923 at which time and until an undisclosed date in 1924, the defendant had remained in Italy for upwards of four years after his discharge from the Italian Army.

1932–1940—In the month of June he returned to Italy and remained there continuously until 1950, living with his wife and family; from 1934 until 1940 he was regularly employed as a steward on the Italian passenger S/S Rex, plying between Naples and New York; he was listed on the ship's manifest during those years as being of Italian nationality, although he did not sign articles.

The defendant used a landing card, issued by the U. S. Inspector of Immigration, for the purpose of going ashore, while he was so employed.

When he spent any time ashore he slept at an apartment in 634 Union Street, Brooklyn, occupied as tenant by one Genero Sammarco and the latter's brothers; as to this lodging arrangement, the defendant testified as follows:

"Q. Did you pay anything for rent? A. Yes, I pay money * * * because I share the apartment which was mine, I share all the time."

He was also asked:

"Q. Now, you were here on a number of occasions between 1934 and 1940. Why didn't you take a job in the United States? A. Well, I was working between Italy and the Rex. I don't suppose to give up. I suppose I like the job like another job."

The Rex was laid up in 1940, and the defendant was discharged in January of that year. Thereafter he was idle for about one year and then entered the employment of the recruiting office of the Italian Army in June of 1942 until July of 1943, remaining in the town of Torre del Greco in Italy with his wife and family. His occupation after July 1943 is not clearly shown.

1945—On November 23 of 1945 the defendant made verified application at the office of the American Vice Consul in Naples for Registration (U.S.Ex. 2) in order to obtain a new passport to come to the United States. At the time of signing that application, he delivered upon request, his certificate of naturalization.

A supplemental statement attached thereto contains details of the defendant's residence in Italy and his activities during the period between 1932 and 1945. This recital includes his membership in the Fascist Party from 1927 to 1943 and in a labor union which was an adjunct thereof.

1946—Under date of October 2, 1946 the said Vice-Consul certified pursuant to Section 338(c) Nationality Act of 1940, as to defendant's residence in Italy from 1932 to the date of the certificate "within five years after his naturalization" on January 22, 1929 (U.S.Ex. 1).

The certificate recites the ownership by defendant of property (an apartment) in Italy valued at approximately 200,000 lire. The defendant testified that it is actually his wife's property by inheritance.

Following the certificate above referred to, the defendant refused to sign a consent to a decree cancelling his naturalization which was submitted to him.

1948—January 29, 1948, complaint filed in this cause seeking cancellation of defendant's naturalization certificate based upon the said certification by the United States Consul. Process was duly served by publication and mailing.

A default decree duly ensued on December 8, 1948; it was vacated by order dated November 18, 1952 pursuant to petition filed by defendant in January, 1952, for leave to contest the cause on the merits.

1950—On September 22, 1950 the defendant returned to the United States, being then a seaman (steward?) on the Italian S/S Liguria. He used a landing permit that he overstayed, and which subjected him to deportation proceedings which were duly initiated and resulted in a hearing on June 19, 1952. The proceeding was terminated in view of the order opening defendant's default in this pending cause.

1955—By order dated January 17, 1955, an amended complaint was authorized over defendant's opposition, and the issues based thereon were reached for trial on December 1 and 2, 1955.

Four causes are pleaded:

*First,* under Sections 340(a) and (d) of the Nationality Act of 1952, 8 U.S.C. A. § 1451, and Section 338(c) of the Act of 1940, 8 U.S.C. § 738(c).

This alleges:

(1) Procurement of the naturalization certificate on January 22, 1929 by fraudulent concealment as alleged, of defendant's intention not to reside permanently in the United States.

(2) That within five years from January 22, 1929, namely in June, 1932, the defendant left this country, and gave up and abandoned his residence and domicile here, removed to Italy, "where he established a permanent residence" and where he now resides.

The remaining allegations are not presently material.

*Second:* That in the process of procuring his naturalization certificate on

January 22, 1929, he testified that his only absence from the United States after acquiring his residence in Brooklyn in 1921, was a visit to Italy from November 22, 1927 to July 13, 1928 for the purpose of marrying. That the foregoing was false in that he actually departed in 1915 and did not return until 1924. That he failed to disclose that absence; also that he was not a resident of the United States for five years as the law required.

That thereby the said naturalization was illegally procured by misrepresentation and concealment of such material facts. (The five-year period reached back from October 18, 1928 to October 18, 1923.)

*Third:* On or about June 20, 1932 the defendant being a naturalized citizen (by which is presumably meant that his certificate had not been cancelled) took up a permanent residence in Italy where he continued to reside until September, 1950.

That by operation of the Italian Nationality Law of 1912, Article 9, the defendant obtained naturalization in Italy after two years' residence following June 20, 1932.

That he became expatriated as a United States citizen pursuant to Section 2 of the Act of March 2, 1907 (compare 8 U.S.C. § 804—1940 Ed.*).

That the defendant "ratified and accepted his reacquisition of Italian citizenship by naturalization" by his conduct while in Italy as heretofore alluded to in part, in the foregoing recapitulation of undisputed facts.

That he did not return to the United States and assume any duties of citizenship. This obviously refers to the failure to return to this country until 1950.

That a declaratory judgment of expatriation is sought, as an alternative form of relief.

*Fourth:* That the defendant, then a naturalized citizen, took up his residence in Italy in 1932 where his "general abode" continued until 1950. That pursuant to 8 U.S.C. § 804(a), and under Article 9 of the Nationality Laws of Italy of 1912 and 8 U.S.C. § 804(b) and (c), the defendant has become expatriated as a citizen of the United States by operation of law, and that a declaratory judgment to that effect is sought.

The prayer for relief is appropriate to the causes so pleaded.

The answer contains admissions and denials, sufficient to put the plaintiff to its proof.

The defendant has moved to dismiss so much of the first and second causes as pleaded, as rests upon the provisions of the 1952 Act, since this cause was instituted in 1948. Decision was reserved on that motion.

In weighing the evidence the court accepts the admonitions repeatedly quoted in defendant's brief, that the requirement resting on the plaintiff is to produce evidence that is clear, unequivocal and convincing.

However engaging judicial rhetorical reference may be to the "priceless privilege" of American citizenship, it is also true that such expressions must be interpreted in light of the facts giving rise to their pronouncement. It is indeed an acquisition, which does not lend itself to transient manifestation depending upon the accidents of climate, environment, or temporary personal preference.

The defendant's motion to strike all testimony which might be deemed relevant under the Nationality Act of 1952 as to the first and second causes is of more apparent than actual importance. It is true that this action was started in 1948, and manifestly an alleged violation of a statute which became effective nearly four years later would have no place in such a cause, nor does the Government argue to the contrary. The probable reason for amending the complaint in 1955 to embrace the 1952 Act was to anticipate and negative any assertion that an offence under the Nation-

* Now Immigration and Nationality Act, § 352, 8 U.S.C.A. § 1484.

ality Act of 1940 had become obsolete in the legal sense.

The 1952 Act in 8 U.S.C.A. § 1101 Note contains a saving clause which is too long to quote in extenso, but which clearly provides that nothing contained in the Act in the absence of special provision to the contrary " 'shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization * * * which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition * * * or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such * * * are, unless otherwise specifically provided therein, hereby continued in force and effect.' "

Further, when the amended complaint as to the first and second causes of action refers to Section 338(c) of the Nationality Act of 1940, 8 U.S.C. § 738(c), the apparent purpose was to allege a continuity of statutory purpose respecting the valid acquisition of citizenship through the naturalization process.

If the purpose of the pleading has been correctly understood, it follows that the motion to strike should be denied, for the reason that the earlier statute does not differ in any material respect from the Act of 1952 as to the two alleged causes which are addressed to the defendant's intention at the time he became naturalized, to depart from this country and abandon his citizenship.

The applicable provisions of the 1940 Act will be found in 8 U.S.C. § 738(c), which reads in material part as follows:

"(c) If a person who shall have been naturalized shall, within five years after such naturalization, return to the country of such person's nativity * * * and take permanent residence therein, it shall be considered prima facie evidence of a lack of intention on the part of such person to become a permanent citizen of the United States at the

time of filing such person's petition for naturalization, and, in the absence of countervailing evidence, it shall be sufficient in the proper proceeding to authorize the revocation and setting aside of the order admitting such person to citizenship and the cancelation of the certificate of naturalization as having been obtained through fraud. * * * "

A consular certificate duly certified is declared to be "admissible in evidence in all courts in proceedings to revoke and set aside the order admitting to citizenship and to cancel the certificate of naturalization."

The 1952 Act, 8 U.S.C.A. § 1451(d), is substantially identical down to the words "through fraud" which do not appear, but in place thereof the following occurs:

"by concealment of a material fact or by willful misrepresentation * * * "

and the Act further contains provisions as to the effective date of the order of cancellation.

Thus it will be seen that the reference to the 1952 statute in the amended complaint did not import into the controversy any new issue to the detriment of the defendant, which means that if the testimony would establish a violation of the 1940 Act, the most that could result from a denial of the defendant's motion to strike would be to show, as has been above observed, a continuity of legislative purpose touching the validity of the defendant's naturalization as judged by his conduct, which the evidence clearly establishes, during the years 1932 to 1950 inclusive.

Turning now to the facts as heretofore related with respect to the first cause of action, it clearly appears that the defendant returned to Italy in 1932 and there remained continuously for the ensuing eighteen years, living with his wife and family and making his home in Torre del Greco. His employment from 1934 to 1940 inclusive was as a steward on an Italian passenger liner sailing reg-

ularly between Naples and New York, and the answer which has been quoted, to his counsel's question as to why during those years he did not take a job in New York, explains his state of mind completely, for he said "I suppose I liked the job like another job."

He voluntarily sought employment in the Recruiting Office of the Italian Army which was his occupation from the month of June, 1942 until July of 1943.

Brief details of his life in Italy from 1932 until November 23, 1945 when he made application to the American Consul in Naples, are stated in the supplement to the application that he made in effect for the issuance of a passport (constituting U. S. Exhibit 2) from which it appears that in connection with his position in the Recruiting Office of the Italian Army, he said:

"I held this position from June 1942 to July 1943. Logically I was accepted at that office, which was a branch of the Ministry of War as an Italian citizen. My salary was paid from funds of the Ministry of War.

"I joined the Fascist Party in 1927 and I was a member therein until July 25, 1943, the fall of the fascist regime. I belonged to this party even in the United States and so, I continued my membership in Italy."

Further in reference to his membership card and his affiliation with the labor union, he said:

"While in Italy I represented myself as an Italian citizen in connection with my jobs and as an Italian I obtained three cards of Identity * * *

"My wife and my five children, four included in this application and one born prior to my naturalization as an American citizen, never resided in the United States. In Italy I own an apartment house valued at about Lire 200,000, more or less. I inherited this property from my mother.

"I own no property or money in the United States."

The only material contradiction of the foregoing which the defendant made on the witness stand at this trial had to do with the property in Italy and its alleged inheritance by his wife; and also he said that he did own some property in the United States during this period of time, namely, such wearing apparel as he kept in the apartment at 634 Union Street and he claimed to own some of the furniture, but as to that no details were given.

The foregoing is deemed by this court to be clear, unequivocal and convincing evidence that when the defendant went to Italy in 1932 as he said on the witness stand, because of the depression in the United States, he thought he would better his condition by so doing. His testimony on cross-examination was:

"Q. I see. So because there was a depression in the United States you returned to Italy? A. Yes, that is it exactly.

"Q. I see. So you returned to Italy to see if you could make some money. Is that correct? A. Right.

"Q. Well, Mr. Cuccaro, you said you intended to become a citizen of the United States, to remain in the United States. Now, when there was a depression you left the United States. You didn't think it was a good place to live. Is that right? A. Yes."

The above-quoted passage from the statement forming part of Exhibit 2 concerning the defendant's membership in the Fascist Party was denied by him in his deportation proceeding. However, on his trial on direct examination, the following occurred:

"Q. In it (the said statement) there is a statement that you joined the Fascist Party in 1927. Is that a correct statement? A. Yes, sir."

He went on to tell his purpose and thus demonstrated that his testimony on the deportation hearing was untrue in this respect. Speaking generally, his testimony at the trial on this subject reveals

not only the fact of his membership in that party, but also in the "Fascist Federation of Industrial Workers."

Since this defendant's return to Italy in 1932, namely within five years after his naturalization, has thus been shown to have been consistent with a purpose to take permanent residence in Italy, it follows that his conduct as disclosed in this record is justifiably to be "considered prima facie evidence of a lack of intention * * * to become a permanent citizen of the United States at the time of filing such person's petition for naturalization."

■ This record is further deemed to be deficient in a disclosure of "countervailing evidence", and the showing is found to be sufficient in this proceeding to authorize the revocation and setting aside of the order admitting this defendant to citizenship and the cancellation of his certificate of naturalization, as having been obtained through fraud, and the first cause of action alleged in the amended complaint is thus found to have been established.

As has been said, the second cause has to do with the defendant's testimony concerning his residence in the United States prior to the time of the filing of the petition, and the failure to disclose that he was not such a resident for five years preceding October 18, 1928.

In the recital of facts the allegation of continuous residence has been quoted and as has been stated, the period of five years immediately preceding the date of that petition began October 18, 1923, at which time the defendant was actually in Italy having remained there for over four years after his discharge from the Italian Army.

In the petition he made no allusion to his absence from the United States beginning in 1915 and terminating in 1924 —the period that embraced his military service in connection with World War I. It satisfactorily appears that in connection with his examination conducted with reference to the petition, the defendant disclosed that he went back to Italy on November 22, 1927 and there remained until July 13, 1928 to get married, but there is no reference whatever to the earlier absence of nine years above referred to, which means that he withheld that information deliberately. On cross-examination at the trial, the following appears:

"Q. Now, isn't it a fact, Mr. Cuccaro, that when you signed that petition for naturalization you knew that if you were not in the country for five years preceding naturalization, you wouldn't be admitted to citizenship? A. Yes, I know that."

It can be assumed that if the defendant had disclosed to the Examiner the fact of his military service in Italy at a time that he was an alien residing in this country, provided such service terminated five years prior to the filing of the petition, no infraction of the law would have been deemed to have been present; however, since that absence extended from 1920 to an undisclosed date in 1924, it involved a period of over a year which, if subtracted from the five-year requirement existing on October 18, 1928, would have rendered the filing of the petition premature by that interval.

■ It results therefore that the defendant's naturalization was illegally and fraudulently procured by willful misrepresentation and concealment of material facts, and cancellation for that reason is required by the provisions of the applicable statute.

The defendant cites among other cases, In re Schneider, C.C., 164 F. 335; U. S. v. Cantini, D.C., 199 F. 857 and U. S. v. Manzo, D.C., 59 F.Supp. 447.

None of these involves a deliberate suppression of facts that the examiner was entitled to know in the discharge of his duties. Nor an admission that the effect of misrepresentation was calculated.

The third and fourth causes seek alternative relief in the form of a declaratory judgment that the defendant brought about his own expatriation within the purview of the Italian Na-

tionality Law of 1912 as to the third cause, and the provisions of the 1940 Act (8 U.S.C. § 804 (a), (b) and (c)) as to the fourth.

The defendant urges that the position of the Government is inconsistent in that under the first two causes naturalization is sought to be cancelled, while the third and fourth invoke the doctrine of expatriation, which means that the legality of the acquired citizenship is necessarily recognized as a basis for the declaratory judgment sought.

■ In the opinion presently held, there is no such inconsistency thus revealed as to require an election of remedies on the part of the plaintiff since the defendant's naturalization proceedings, having been conducted according to the requirements of the statutes, continued in force and effect until a decree of a competent court should otherwise determine. Therefore it follows that expatriation by act of the defendant would be a competent instrumentality for terminating a citizenship ostensibly acquired by apparent observance of statutory requirements; this means that either remedy is available to the Government in the one action.

The evidence is deemed to support the contentions of the Government as to the first two causes; but if the decision in that respect should be held to be clearly erroneous, it would still be necessary to deal with the prayer for a declaratory judgment in accordance with the third and fourth causes as pleaded; and the court now turns to the consideration of the evidence in respect thereto.

The Italian statute has not been directly offered in evidence, but U. S. Exhibit 9, being the certificate of expatriation issued by the U. S. Vice-Consul in Naples under date of October 2, 1946 contains what purports to be the text of that law, namely:

"Article IX. He who has lost his citizenship in pursuance of Articles VII and VIII, may reacquire it * * *

"(3) After two years of residence in the Kingdom if the loss of citizenship has been due to the acquisition of foreign citizenship."

■ The consular report was received in evidence, 28 U.S.C. § 1740, and since the defendant has not questioned the authenticity of the text as above quoted, nor moved to strike from the record so much of the certificate on the ground that the law itself has not been correctly established, it is thought that reliance thereon is justified for the purpose of this case.

Nor is it urged that this statute was not in effect in Italy on the date of the consular certificate, from which it may be reasonably inferred that no issue is made to that effect.

The facts and circumstances concerning the defendant's residence in Italy from 1932 to 1950 have been sufficiently discussed for the purposes of all asserted causes of action.

■ If it be competent for this court to interpret and defer to the provisions of the Italian statute, it would certainly seem clear that the defendant's conduct as heretofore recited would necessarily establish that under the provisions of the Italian statute he did indeed deliberately and designedly reacquire his native nationality.

As to the third cause, then, the Government is entitled to the judgment which it seeks.

The fourth cause rests upon the provisions of the Nationality Act of 1940, 8 U.S.C. § 804:

"§ 804. *Expatriation of naturalized nationals abroad*

"A person who has become a national by naturalization shall lose his nationality by:

"(a) Residing for at least two years in the territory of a foreign state of which he was formerly a national or in which the place of his birth is situated, if he acquires through such residence the national-

ity of such foreign state by operation of the law thereof; or

"(b) Residing continuously for three years in the territory of a foreign state of which he was formerly a national or in which the place of his birth is situated, except as provided in section 806 hereof [exceptions not applicable].

"(c) Residing continuously for five years in any other foreign state, except as provided in section 806 hereof."

It has been seen that under the operation of the Italian law this defendant resumed his Italian nationality which brings into operation the provisions above quoted.

The defendant seeks to avoid the impact of this statute by arguing that his membership in the Fascist Party was nominal, and that the other expedients to which he resorted were necessary for his existence and that of his family. It is probably true that ration cards were required in the practical sense but that is only part of the story. It is to be remembered that either he or his wife, perhaps both, were in possession of substantial real estate holdings in Italy and that he and his family resided there to all intents and purposes as nationals of Italy, and that he took no step that was inconsistent with that condition until 1948 and after the present action had been instituted.

The argument that he maintained a residence in Brooklyn is not convincing; it is true that he used the Union Street address as a place to sleep between voyages of the Italian ships on which he was employed, but no member of the Sammarco family testified on the subject of the actual tenancy of the premises. The statement that this defendant made on the witness stand of his ownership of some of the furniture in the apartment in question is at variance with what appears in his statement made to the American Consul on November 23, 1945 to the effect that he owned no property in the United States (U. S. Exhibit 2). Certainly as between the temporary lodgings which he occupied at 634 Union Street, Brooklyn, during the years of his service as a steward, and his abode in Italy during the eighteen years that elapsed between 1932 and 1950, there is no reasonable doubt in the mind of this court that the latter constituted his principal dwelling or actual abode.

It has therefore been demonstrated by clear, unequivocal and convincing evidence in the opinion of this court, that the defendant expatriated himself and that the alternative form of relief sought by the plaintiff is appropriate and should be granted.

Most of the cases cited by the defendant have been examined and are of such diverse factual constituency as not to point to the course of decision in this case.

With respect to the expatriation causes, the case of Lapides v. Clark, 85 U.S.App.D.C. 101, 176 F.2d 619, certiorari denied 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527, is thought to be apposite.

The "priceless possession" formula cannot be applied as an abstraction.

That which one person so esteems, another may consider a mere convenience of ephemeral value which rises or falls in response to the exigencies of a given occasion.

Such a case is presented by this record in the judgment of this court.

It results from the foregoing that the relief prayed for in the complaint should be granted.

Settle decree.