**D'ARGENTO v. DULLES, Secretary of State.**

**Civ. A. No. 814–53.**

United States District Court
District of Columbia, Washington, D. C.,
Division.
July 24, 1953.

934

Jack Wasserman, Washington, D. C., for plaintiff.

Leo A. Rover, U. S. Atty., Ross O'Donoghue, Asst. U. S. Atty., Washington, D. C., for defendant.

MORRIS, District Judge.

This is an action, brought February 21, 1953, by the plaintiff against the Secretary of State, seeking a declaratory judgment that he is a citizen of the United States, pursuant to Title 28, U.S.C. § 2201, and for review of administrative action, pursuant to Title 5, U.S.C.A. § 1009. The plaintiff was born in Italy in 1903, came to the United States, was lawfully admitted for permanent residence in 1921, was natural-ized as an American citizen in 1927, returned to Italy with an American passport in 1933, and has not since returned to the United States. It is alleged that, while he was inducted into the Italian Army, and was required to take an oath of allegiance to the King of Italy, serving in that army from 1935 to 1936, and again in 1939, he did not do this voluntarily; and that, while he voted in Italian elections in 1946, he was required by law to do so, and did so in ignorance that it might result in his loss of American citizenship. It is stipulated that a certificate of expatriation of the plaintiff has been approved by the Secretary of State, and that the plaintiff is presently outside of the United States in Windsor, Canada. The contention of the plaintiff is that he has not been expatriated as an American citizen, because the matters and things alleged to constitute such expatriation were not voluntary, but were the result of coercion upon him. The matter is before the Court upon a motion of the Secretary of State to dismiss the complaint on the ground that the Court is now without jurisdiction to entertain such proceedings. This motion is opposed by the plaintiff.

There can be no doubt that prior to the Declaratory Judgment Act of June 14, 1934, 48 Stat. 955, there was no jurisdiction in the federal courts to render a declaratory judgment. Since that time such action has been deemed appropriate to determine citizenship status, Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320, and in Section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903, Congress expressly sanctioned independent judicial inquiry when an asserted right to United States citizenship was placed in jeopardy. Again, by the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., actions for declaratory judgments were expressly recognized as appropriate for the review of the action of administrative agencies in the absence of provision for statutory review, Title 5, U.S.C.A. § 1009. That was the state of the law until the effective date, December 24, 1952, of the Immigration and Nationality Act of 1952, Title 8, U.S.C.A. § 1503. Section 360 of this Act, 66 U.S. Statutes at Large 273, provides:

"(a) If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28, United States Code, against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any exclusion proceeding under the provisions of this or any other act, or (2) is in issue in any such exclusion proceeding. An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is hereby conferred upon those courts.

"(b) If any person who is not within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may make application to a diplomatic or consular officer of the United States in the foreign country in which he is residing for a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission. Upon proof to the satisfaction of such diplomatic or consular officer that such application is made in good faith and has a substantial basis, he shall issue to such person a certificate of identity. From any denial of an application for such certificate the applicant shall be entitled to an appeal to the Secretary of State, who, if he approves the denial, shall state in writing his reasons for his decision. The Secretary of State shall prescribe rules and regulations for the issuance of certificates of identity as above provided. The provisions of this subsection shall be applicable only to a person who at some time prior to his application for the certificate of identity has been physically present in the United States, or to a person under sixteen years of age who was born abroad of a United States citizen parent.

"(c) A person who has been issued a certificate of identity under the provisions of subsection (b), and while in possession thereof, may apply for admission to the United States at any port of entry, and shall be subject to all the provisions of this Act relating to the conduct of proceedings involving aliens seeking admission to the United States. A final determination by the Attorney General that any such person is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction in habeas corpus proceedings and not otherwise. Any person described in this section who is finally excluded from admission to the United States shall be subject to all the provisions of this Act relating to aliens seeking admission to the United States."

Unless preserved by the savings clause of the Act, there cannot reasonably be any question that the intention of the Congress was definitely to withdraw the right of a person who is not within the United States, and who claims a right or privilege as a national of the United States, to prosecute an action in the federal courts for a declaratory judgment, or for a review of administrative action, except as such question, and those properly relating thereto, may be raised and adjudicated in a habeas corpus proceeding under the conditions stated in the statute; and it is equally clear that jurisdiction of the federal courts to entertain any such proceedings for a declaratory judgment or review of administrative action, except as it arises in a

936

habeas corpus proceeding, is withdrawn and terminated. There is absolutely nothing in the savings clause from which it can be reasonably inferred that a person who is not within the United States, and who claims a right or privilege as a national of the United States, may institute a proceeding in the federal courts for a declaratory judgment with respect to the right claimed, or for the review of action by administrative agencies with respect to such right claimed, except as such question arises in a habeas corpus proceeding in the circumstances stated in the statute.[1]

■■ There can be no reasonable question as to the power of the Congress to determine the jurisdiction, within constitutional limits, which inferior federal courts shall have, and as to the power of the Congress to withdraw such jurisdiction, with the apparent exception of suspension of the writ of habeas corpus, except in cases of rebellion or invasion. There is no constitutional right under the due process clause to a judicial hearing in review of action by administrative agencies, if no constitutional rights, including due process, have been infringed. The statute here under consideration expressly provides a method by which the person who is not within the United States, and who claims a right or privilege as a national of the United States, and is denied such right or privilege by any department or official thereof upon the ground that he is not a national of the United States, may apply for a certificate of identity to enable him to proceed to a port of entry, where, if refused admission, he may have a review of the action complained of in habeas corpus proceeding. There is not the slightest question but that

1. Sec. 405. "(a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. When an immigrant, in possession of an unexpired immigrant visa issued prior to the effective date of this Act, makes application for admission, his admissibility shall be determined under the provisions of law in effect on the date of the issuance of such visa. An application for suspension of deportation under section 19 of the Immigration Act of 1917, as amended, or for adjustment of status under section 4 of the Displaced Persons Act of 1948, as amended, which is pending on the date of enactment of this Act, shall be regarded as a proceeding within the meaning of this subsection.

"(b) Except as otherwise specifically provided in title III, any petition for naturalization heretofore filed which may be pending at the time this Act shall take effect shall be heard and determined in accordance with the requirements of law in effect when such petition was filed.

"(c) Except as otherwise specifically provided in this Act, the repeal of any statute by this Act shall not terminate nationality heretofore lawfully acquired nor restore nationality heretofore lost under any law of the United States or any treaty to which the United States may have been a party.

"(d) Except as otherwise specifically provided in this Act, or any amendment thereto, fees, charges and prices for purposes specified in title V of the Independent Offices Appropriation Act, 1952 (Public Law 137, Eighty-second Congress, approved August 31, 1951), may be fixed and established in the manner and by the head of any Federal Agency as specified in that Act.

"(e) This Act shall not be construed to repeal, alter, or amend section 231(a) of the Act of April 30, 1946 (60 Stat. 148; 22 U.S.C. 1281(a) ), the Act of June 20, 1949 (Public Law 110, section 8, Eighty-first Congress, first session; 63 Stat. 208), the Act of June 5, 1950 (Public Law 535, Eighty-first Congress, second session), nor Title V of the Agricultural Act of 1949, as amended (Public Law 78, Eighty-second Congress, first session)." 66 United States Statutes at Large 280, quoted in part in 8 U.S.C.A. § 1101 note.

he could there raise any question of constitutional right, including the failure to accord to him due process. It is also provided that, if he should be refused a certificate of identity, he may have an appeal to the Secretary of State, who, if he approves the denial, shall state in writing his reasons for his decision. It is not here claimed that any certificate of identity has been applied for, refused, or, upon appeal, denied by the Secretary of State, and so the question of any judicial review of that action is certainly not open for consideration now. The point is that the Congress has provided a method by which the plaintiff may secure a determination of his rights, and that determination is subject to review in habeas corpus proceedings.

It is urged that this statutory remedy is a harsh departure from the legislative policy —much emphasized in recent years—that there should be liberal judicial review of administrative action., If that be so, it is a matter for action by the Congress, not the courts.