**TOM MUNG NGOW**

v.

**DULLES, Secretary of State.**

**Civ. A. No. 1591–54.**

United States District Court, District of Columbia.

July 9, 1954.

Joseph A. Rafferty, Jr., Asst. U. S. Atty., Washington, D. C., for defendant, for the motion.

Jack Wasserman, Washington, D. C., for plaintiff, opposed.

HOLTZOFF, District Judge.

The question presented on this motion is whether a person who claims to be a citizen of the United States, but who is outside of this country, may maintain an action for a declaratory judgment to secure an adjudication of his citizenship.

This action is brought against the Secretary of State for a declaratory judgment that the plaintiff is a citizen of the United States. The matter comes before the court on a motion by the defendant to dismiss the complaint for insufficiency. This motion, at the defendant's request, is being treated as a motion for summary judgment. The material and pertinent allegations of the complaint can be briefly summarized. It is alleged that the plaintiff was born in China on February 28, 1930, and that he is a son of a citizen of the United States. On this basis it is claimed that the plaintiff is a citizen of the United States by birth. It is further averred that the plaintiff made an application to the American consul at Hong Kong, for a passport to enable him to come to the United States, but that the application was disapproved on the ground that the plaintiff had not established his citizenship.

The plaintiff seeks an adjudication of his citizenship and of his right to enter the United States. The defendant moves to dismiss the complaint on the ground that the action does not lie. The question of law to be determined on this motion is whether this action may be maintained. While the complaint also raises certain constitutional issues, they are not reached for determination at this time, in the light of the disposition that is being made of this motion.

Actions for declaratory judgments were introduced into Federal jurisprudence by the Declaratory Judgment Act of June 14, 1934, 48 Stat. 955; 28 U.S.C.A. § 2201. The Supreme Court has approved the application of this statute to suits brought against the Secretary of State or the Attorney General, to establish citizenship, Perkins v. Elg, 69 App.D.C. 175, 99 F.2d 408, affirmed 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320; McGrath v. Kristensen, 340 U.S. 162, 168–171, 71 S.Ct. 224, 95 L.Ed. 173.

Later the Nationality Code of 1940, § 503, Act of October 14, 1940, 54 Stat. 1137, 1171, created a special statutory action to obtain a declaration of na-

tionality. This statutory proceeding differed from the general declaratory judgment action in two respects: first, the statute permitted the special action to be brought either in the District of Columbia or in the district of the plaintiff's residence, instead of only in the district of the defendant's residence, which would ordinarily be the District of Columbia; and second, the right of action was implemented by a provision that if the plaintiff was outside of the United States, he might obtain from a diplomatic or consular officer of the United States, upon a proper showing, a certificate of identity temporarily admitting him to this country on condition that he should be subject to deportation if the action should be decided against him.

 Since repeals by implication are not favored, and as there was no repugnancy or conflict between the general provisions of the Declaratory Judgment Act and Section 503 of the Nationality Code, the former may not be deemed repealed *pro tanto*. Both remedies continued to coexist side by side. While the specific provisions were in effect, however, the general remedy fell into temporary disuse for adjudications of citizenship, as the special action provided by the Nationality Code was more flexible and more efficacious.

This was the state of the law when the Administrative Procedure Act was enacted on June 11, 1946, 60 Stat. 237; 5 U.S.C.A. § 1001 et seq. One of the objectives of this Act was to expand judicial review of administrative actions. This Act contains the broad provision, 5 U.S.C.A. § 1009(a), that, "Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof." Only two exceptions are expressed to this general rule: "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion." The aim of the stat-

ute is brought into sharp focus by an additional provision (Id., subsection (c)):

"Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review."

The Act contains an express provision concerning the form of proceeding to secure judicial review of agency action (Id., subsection (b)):

"The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action (*including actions for declaratory judgments* or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction." [1]

The object and intent of Congress in enacting this beneficent and progressive legislation is strongly emphasized by a unique and unusual expression found in the last section of the statute, 5 U.S.C.A. § 1011:

"No subsequent legislation shall be held to supersede or modify the provisions of this chapter except to the extent that such legislation shall do so expressly."

The purpose of Congress further unequivocally appears from the following statement in the report of Senator McCarran as Chairman of the Committee on the Judiciary, concerning this legislation (S.Rept. No. 752, 79th Cong., 1st Sess.):

"It [i. e., the bill] sets forth a simplified statement of judicial review designed to afford a remedy for every legal wrong."

Again the report sets forth that the provision above quoted confers "a right of review upon any person adversely affected in fact by agency action or aggrieved within the meaning of any

---

1. Emphasis supplied.

statute." Finally, it is stated that, "Agency action made reviewable specially by statute or final agency action for which there is no other adequate judicial remedy, is subject to judicial review."

 It is inconceivable how the Congress could have expressed more emphatically or more unequivocally its intention to subject every final agency action to judicial review at the behest of any person adversely affected by it, with the sole exceptions of actions in respect to which statutes preclude judicial review, and activities committed by law to agency discretion. Final action of any governmental agency declining to recognize a claim to citizenship, is obviously, therefore, subject to judicial review under the Administrative Procedure Act. No subsequent legislation may be construed as superseding or modifying this right unless it does so expressly.

The Act of June 27, 1952, 66 Stat. 166, 8 U.S.C.A. § 1101 et seq., revamped and codified the Immigration and Naturalization laws in a comprehensive manner. Among other things, it modified the provisions relating to the above-mentioned special statutory remedy for the adjudication of citizenship provided by the Nationality Act of 1940. The 1952 Act continues this special remedy for persons within the United States, unless the question arises in an exclusion proceeding, since in that event the matter may be determined by a writ of *habeas corpus*, 8 U.S.C.A. § 1503(a). A person who is not within the United States, if at any time previously he had been in this country, or if he is under sixteen years of age having been born abroad of a United States citizen parent, is permitted by the 1952 Act to apply for a certificate of identity in order to travel to a port of entry to the United States. An appeal to the Secretary of State is permitted from a denial of an application for such a certificate, 8 U.S. C.A. § 1503(b). The statute is silent as to the right of such a person to secure a judicial review after he has exhausted

his administrative remedy. No doubt the 1952 Act repealed the special statutory remedy in respect to such person outside of the United States. The Declaratory Judgment Act of 1934 is still in effect, however, even in respect to him, as is the Administrative Procedure Act with its emphatic provisions above quoted. It is quite obvious that the purpose of modifying the special remedy prescribed by the Nationality Code of 1940 was to limit and circumscribe the right to procure a certificate of identity, because manifestly it was capable of abuse. An action might well be filed with the ulterior motive of securing a certificate of identity, rather than with a bona fide purpose of obtaining an adjudication of citizenship.

No intent on the part of Congress is discernible to repeal *pro tanto* the Declaratory Judgment Act of 1934, or to limit the Administrative Procedure Act. It is to be assumed that if Congress had intended to do so, it would not have accomplished this result in such an equivocal and indirect manner. Again, we must bear in mind the admonition contained in the Administrative Procedure Act, that no subsequent legislation should be held to supersede or modify its provisions except to the extent that such legislation shall do so expressly.

 The court is, therefore, of the opinion that the 1952 Act has not repealed or modified either the Declaratory Judgment Act or the Administrative Procedure Act, and that, therefore, this action lies.

Citizenship of the United States is precious. No intention should be attributed to the Congress to repose in a subordinate in the Executive Branch of the Government the authority to make final disposition of claims to citizenship without according an opportunity of recourse to the courts, unless this purpose is clearly expressed in a statute. A citizen of the United States should not be subjected to the risk of being deprived of his heritage by a possible error of a minor administrative official without any redress. Neither the applicable

statutes on their face nor their legislative history disclose any purpose on the part of the Congress to reach such a result, which might prove hazardous and which would be contrary to the contemporary trend of extending rather than narrowing judicial review of administrative action.

The decision in D'Argento v. Dulles, D.C.D.C., 113 F.Supp. 933, on which the defendant relies, is distinguishable. In that case the plaintiff was at Windsor, Canada. He had lived in the United States some time prior to reaching the age of sixteen and, consequently, he had the right to apply for a certificate of identity under the 1952 Act, and if it were denied to appeal to the Secretary of State. He failed to exhaust this administrative remedy and prematurely brought an action for a declaratory judgment. The court, on this ground, held that the action was not maintainable, summarizing its ruling as follows, 113 F.Supp. at page 937:

> "It is not here claimed that any certificate of identity has been applied for, refused, or, upon appeal, denied by the Secretary of State, and so the question of any judicial review of that action is certainly not open for consideration now. The point is that the Congress has provided a method by which the plaintiff may secure a determination of his rights, and that determination is subject to review in habeas corpus proceedings."

It will be observed that the court expressly left open for future determination the question whether any judicial review could be had.

There is still another distinction between the D'Argento case and the case at bar. In the D'Argento case the plaintiff was at Windsor, Canada. By proceeding across the bridge or through the tunnel to Detroit, he could have presented himself, for admission to the United States, and, if excluded, could have secured a judicial review by a writ of habeas corpus. In the case at bar,

the plaintiff is alleged to be in China. He has no way of presenting himself for admission and testing his rights by a writ of habeas corpus. No steamship company, or air line would sell him passage, since any common carrier bringing to the United States a person without a passport or a visa, is subject to a heavy fine. While there are some remarks contained in the opinion in the D'Argento case that seem to support the defendant's contention, that discussion must necessarily be deemed obiter and, therefore, not binding, although the court has a high regard for the jurist who wrote that opinion.

Motion to dismiss the complaint is denied.