Maria Luisa **PUIG JIMENEZ**, Plaintiff,
Appellant,

v.

John H. **GLOVER** et al., Defendants,
Appellees.

No. 5285.

United States Court of Appeals
First Circuit.

Heard Feb. 7, 1958.

Decided May 2, 1958.

See also, 131 F.Supp. 550.

B. F. Sanchez Castaño, San Juan, P. R., for appellant.

Ruben Rodriguez-Antongiorgi, U. S. Atty., San Juan, P. R., for appellees.

J. B. Fernandez Badillo, Atty. Gen., Commonwealth of Puerto Rico, and Arturo Estrella and Edgar S. Belaval, Asst. Attys. Gen., for Roberto Sanchez Vilella, Secretary of State of the Commonwealth of Puerto Rico, submitted on the brief filed by the U. S. Atty., by leave of Court.

Before MAGRUDER, Chief Judge, and WOODBURY and STALEY, Circuit Judges.

MAGRUDER, Chief Judge.

Litigation involving nationality is apt to be tangled with technical niceties, and this case is no exception. It is an appeal by Maria Luisa Puig Jimenez from a judgment of the United States

District Court for the District of Puerto Rico, entered May 2, 1957, adjudging that she is not and never was a citizen of the United States, and dismissing her complaint for a declaratory judgment that she is such citizen.

Appellant was born in San Juan, Puerto Rico, on August 24, 1922, her parents being Cristobal Puig and Sofia Perez, both alien Spanish nationals. She was not, therefore, automatically a citizen of the United States by birth, according to the provision of the law then in force, which was § 5 of the Organic Act of 1917. (39 Stat. 953) While § 5 would have permitted her to achieve American citizenship by filing with the United States District Court a sworn declaration of allegiance to the United States upon her twenty-first birthday on August 24, 1943, and for one year thereafter, she failed to take advantage of this procedure.

The Nationality Act of 1940 contained the following provision:

"Sec. 322. A person born in Puerto Rico of alien parents, referred to in the last paragraph of section 5, Act of March 2, 1917 (U.S.C., title 8, sec. 5), and in section 5a, of the said Act, as amended by section 2 of the Act of March 4, 1927 (U.S.C., title 8, sec. 5a), who did not exercise the privilege granted of becoming a citizen of the United States, may make the declaration provided in said paragraph at any time, and from and after the making of such declaration shall be a citizen of the United States." 54 Stat. 1148.*

It is true this § 322 was repealed, along with the whole of the Nationality Act of 1940, by the Act of June 27, 1952 (66 Stat. 280), but of course if appellant had obtained American citizenship under § 322 while it was in force, its repeal would not have affected her status. However, it is not claimed that she ever filed with the district court the declaration of allegiance as required in § 322.

Appellant bases her claim to American citizenship upon the automatic provision of § 202 of the Nationality Act of 1940. We shall discuss the statutory language of this section later on, after dealing with the question whether the court below had jurisdiction to entertain the present complaint for a declaratory judgment.

It appears from the record that in 1936 appellant was taken to Palma de Mallorca, Spain, by her Spanish parents. So far as appears this was intended by the parents to be no more than a temporary visit to Spain, without relinquishment of their residence and domicile in Puerto Rico. At all events, appellant was caught up in the confusion of the Spanish civil war so that for a time it was impossible for her and her parents to return to Puerto Rico, though the American consul at Barcelona was notified of their desire to return to Puerto Rico as soon as conditions would permit. On July 14, 1941, they did return to Puerto Rico. At this time, since appellant was still a minor, she traveled on her father's Spanish passport.

In the year 1949 she traveled again to Spain, this time on an American passport issued to her by the Governor of Puerto Rico. There she married Rafael Jimenez Luque, a citizen of Spain, on July 15, 1950. But on July 8, 1953, the United States consul at Barcelona informed her that her American passport was void, on the ground that she was not, and never had been, an American citizen, and the said passport was taken away from her. However, there was issued to her a visa as a Spanish quota immigrant, on the basis of which she was enabled to re-enter Puerto Rico on July 14, 1954, though admittance was denied to her at that time in her asserted capacity as a citizen of the United States by the officer in charge of the immigration service at San Juan. Presumably

* Now 8 U.S.C.A. § 1402.

at the same time her Spanish husband obtained entry into Puerto Rico as a quota immigrant, for the record discloses that he is now a resident alien in Puerto Rico. So far as the record shows, appellant has continued to reside in Puerto Rico since her return in 1954. It was alleged in appellant's amended complaint, and admitted by the answer, that "Roberto Sanchez Vilella, Esq., as Secretary of State of the Commonwealth of Puerto Rico refused to issue a passport to the complainant as a citizen of the United States of America." We take it that this denial of American citizenship, which took place in Puerto Rico, must have been at some time subsequent to her return to Puerto Rico in 1954.

There is no doubt that appellant's amended complaint exhibits a controversy suitable for judicial determination. Perkins v. Elg, 1939, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320. In the latter case the complaint was held to have been properly brought under the general provisions of the Declaratory Judgments Act. 28 U.S.C. § 2201. As applied specifically to nationality cases, § 503 of the Nationality Act of 1940 (54 Stat. 1171) provided that any person claiming to have been denied a right or privilege as a national of the United States could have his status determined in a declaratory judgment action. Under § 503, the complaint could be filed against the head of the offending department in either the District of Columbia or in the district of the plaintiff's permanent residence. It did not matter whether the plaintiff was in the United States or abroad at the time the right or privilege was denied. If it happened that the plaintiff was outside the United States, and had instituted such a declaratory action, it was provided that he could obtain from the local consul a certificate of identity permitting him to come to the United States to prosecute the lawsuit "upon the condition that he shall be subject to deportation in case it shall be decided by the court that he is not a national of the United States".

This provision of § 503 of the Nationality Act of 1940 had the attention of the Congress when it was considering the McCarran Act of 1952; and § 360 of the latter act was passed (66 Stat. 273) with the evident intention of limiting the opportunity of persons claiming to be citizens to seek a judicial declaration of their rights. Some concern was expressed about the flooding of the courts by such declaratory judgment actions and about the misuse of the so-called certificate of identity so as to allow undesirable persons to slip into the population. See Developments in the Law—Immigration and Nationality, 66 Harv.L. Rev. 643, 674 (1953); (1953) U.S.Code Cong. & Ad.News 2889; Joint Hearings Before the Subcommittee of the Judiciary on Bills to Revise the Laws Relating to Immigration, Naturalization and Nationality, 82d Cong., 1st Sess. 108, 529–31 (1951).

Section 360(a) of the McCarran Act provides as follows:

"If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28, United States Code, against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any exclusion proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such exclusion proceeding. An action under this subsection may be instituted only within five years after the final administrative denial of such right or

privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is hereby conferred upon those courts." 66 Stat. 273, 8 U.S.C.A. § 1503(a).

For a claimant to United States citizenship "who is not within the United States", an administrative procedure is set forth in § 360(b). 8 U.S.C.A. § 1503(b). Such a person, if he is denied his rights as an alleged national, may make application to a diplomatic or consular officer "in the foreign country in which he is residing" for a certificate of identity for the purpose of traveling to a port of entry and applying for admission. If such a certificate of identity is refused by the consular officer, an appeal may be taken to the Secretary of State. The statute makes no specific provision for judicial review in case the Secretary of State should affirm the action of the consular officer, though it may be that such review would be available under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. Cf. McGrath v. Kristensen, 1950, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173; Brownell v. Tom We Shung, 1956, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225. Whether judicial review could constitutionally be denied at this stage we do not have before us in the present case. Section 360(c) (8 U.S.C.A. § 1503(c)) provides that the holder of such a certificate of identity may apply for admission to the United States at any port of entry and shall be subject to all the provisions of law relating to the conduct of proceedings involving aliens seeking admission to the United States. The section also has the provision:

"A final determination by the Attorney General that any such person is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction in habeas corpus proceedings and not otherwise."

We are concerned here with § 360(a), which was the basis on which the amended complaint rested the jurisdiction of the district court in the case at bar. Defendants herein moved to dismiss the complaint for lack of jurisdiction on the contention that declaratory relief, pursuant to § 360(a), cannot be granted unless the plaintiff establishes that the right or privilege as a national of the United States claimed to have been denied was so denied within the United States. It was asserted that the denial in question took place in Barcelona, Spain, when the consular officer there ruled that appellant's American passport was void because she was not an American citizen. See 131 F.Supp. 550.

It seems that appellant has been in Puerto Rico steadily, except for the two periods when she was in Spain, 1936 to 1941 and 1949 to 1954, as above related. It cannot be said that there was anything surreptitious or illegal about her last entry into Puerto Rico on July 14, 1954. Cf. Ng Fung Ho v. White, 1922, 259 U.S. 276, 282, 42 S.Ct. 492, 66 L.Ed. 938. For all that appears, Puerto Rico is her place of permanent residence. If appellees are correct, this appellant, in order to prosecute her claim to be an American citizen, would have to go back to Spain and there start the round of administrative proceedings as detailed in § 360(b) of the McCarran Act.

The language of the McCarran Act does not require us to impute this absurdity to the Congress of the United States. The Congress must speak with a clear voice before the courts would be justified in putting such an interpretation upon legislation as would have the effect of withdrawing the possibility of judicial review from a claimant to American citizenship which such claimant undoubtedly had the right to pursue under the prior legislation. Section 360(a) permits the filing of a declaratory judgment complaint by "any person who is within the United States" who asserts a right or privilege as a national of the United States, which claim is denied by

any department or official of the government upon the ground that the claimant is not a national of the United States.

Appellant certainly was physically, as well as lawfully, "within the United States"[1] at the time she filed the complaint below. If it is necessary to read into § 360(a) the additional requirement that an act of denial of the claimant's right or privilege as a citizen must have taken place within the United States, it is enough to say that the complaint alleges, and the answer admits, that the present Secretary of State of the Commonwealth "refused to issue a passport to the complainant as a citizen of the United States of America."

It might be that, even if appellant failed to qualify under the requirements of § 360(a) of the McCarran Act, she would still be entitled to prosecute a declaratory judgment action under the general provisions of 28 U.S.C. § 2201, since the McCarran Act contains no explicit exclusion of such possibility, as was indeed held by the District Court for the District of Columbia in Tom Mung Ngow v. Dulles, 1954, 122 F.Supp. 709. We do not have to go so far as that in the present case, since we are of opinion that appellant clearly comes within the permissive language of § 360(a) of the McCarran Act.

■ We therefore think that the district court correctly ruled that the motion to dismiss for lack of jurisdiction should be denied. While it is of course true that this appellant does not complain of that ruling, nevertheless we as an appellate court are bound to determine, on our own motion, whether the court below had jurisdiction; for if we thought that it had not, we would have to vacate the judgment below and direct that the complaint be dismissed for lack of jurisdiction, thus saving it from being a determination on the merits. See

Doucette v. Vincent, 1 Cir., 1952, 194 F. 2d 834, 836.

But though we agree with the ruling of the district court that it had jurisdiction of the complaint, we do think that the court committed error in its decision on the merits.

■ Consideration of the merits requires us to examine into the statutory provision under which appellant claims that she automatically became an American citizen, namely, § 202 of the Nationality Act of 1940. That section reads as follows:

"All persons born in Puerto Rico on or after April 11, 1899, subject to the jurisdiction of the United States, residing on the effective date of this Act [January 13, 1941] in Puerto Rico  *  *  *  and not citizens of the United States under any other Act, are hereby declared to be citizens of the United States."

Though it is of no importance in the present case, the Nationality Act of 1940, as a whole, was repealed by the McCarran Act on June 27, 1952 (66 Stat. 280); but the McCarran Act contains § 302 (66 Stat. 236) which in substance re-enacted the provisions of § 202 of the 1940 Act.

Where the district court went astray on the merits, we think, was in the significance it attached to the word "residing" as of January 13, 1941. It is true, appellant was physically present in Spain on that date. But mere physical presence cannot be synonymous with "residence", as the court below itself held in Caolo v. Dulles, D.C.1953, 115 F.Supp. 125. Cf. Willenbrock v. Rogers, 3 Cir., 255 F.2d 236. Section 104 of the Nationality Act of 1940 (54 Stat. 1138) states that, for purposes of certain sections, not however specifically including § 202, "the place of general abode shall be deemed the place of residence." See also Savorgnan v. United States, 1950, 338 U.S. 491, 504–506, 70 S.Ct. 292, 94 L.Ed.

---

[1]. In § 101(a) (38), 66 Stat. 171, 8 U.S. C.A. § 1101(a)(38) the term "United States" is defined as meaning "the con- tinental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States."

287. We also think it is not without significance that the Congress, in enacting the McCarran Act, defined the term "residence", for all purposes of the Act, as meaning "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." (§ 101(a) (33), 66 Stat. 170) It follows that even if plaintiff's claim of citizenship might be considered doubtful under § 202 of the Nationality Act of 1940, it is clear under § 302 of the McCarran Act that if she was not already a citizen of the United States she was declared to be such as of January 13, 1941, in virtue of her birth in Puerto Rico and her "general abode" in Puerto Rico on the critical date, January 13, 1941. Her enforced stay in Spain, due to the civil war, cannot deprive her of a residence, or general abode, in Puerto Rico. See Guessefeldt v. McGrath, 1952, 342 U.S. 308, 312, 72 S.Ct. 338, 96 L.Ed. 342; Acheson v. Yee King Gee, 9 Cir., 1950, 184 F.2d 382.

We say the record makes clear that she had her "general abode" in Puerto Rico on January 13, 1941. Her parents appear to have made their permanent home in Puerto Rico before she was born; and though in 1936 they visited Spain with her, she being still a minor, they were only delayed in returning to their home in Puerto Rico by the aforesaid travel difficulties. Furthermore, even if it be assumed, though the government offered no evidence to that effect, that the parents intended to move their domicile to Spain when they went there in 1936, it would not follow that the minor child could not retain a statutory residence, or general abode, in Puerto Rico. Cf. Savorgnan v. United States, supra, 338 U.S. at pages 504–506, 70 S.Ct. at pages 299–300.

What makes appellant's claim to American citizenship all the more appealing is that, from the time she became twenty-one on August 24, 1943, she could undoubtedly have clinched the matter of her American citizenship under the provision of § 322 of the Nationality Act of 1940 (54 Stat. 1148) by filing with the United States District Court for the District of Puerto Rico a sworn declaration of allegiance to the United States setting forth therein all the facts connected with her residence in Puerto Rico, accompanied by due proof thereof, as originally provided in § 5 of the 1917 Organic Act. (39 Stat. 953) As above stated, § 322 was not repealed until 1952. No doubt the reason appellant did not proceed under that section was her belief that she was already a citizen of the United States, which belief, founded on the automatic provision of § 202 of the Nationality Act of 1940, was sufficiently plausible and persuasive to induce the officials to issue to her an American passport for her trip to Spain in 1949. Of course, in order to obtain that passport, she had in her application to execute a sworn oath of allegiance to the United States. Though this oath of allegiance was not filed with the United States District Court for the purpose of obtaining American citizenship under § 5 of the Organic Act, as extended, but was executed for a different purpose, this may be regarded as a matter of the merest technicality.

A judgment will be entered vacating the judgment of the District Court and remanding the case to that Court with direction to enter judgment declaring the plaintiff to be a citizen of the United States as requested in her amended complaint.