Julius STRUPP, Plaintiff-Appellant,

v.

John Foster DULLES, Secretary of State,
Defendant-Appellee.

No. 360, Docket 24933.

United States Court of Appeals
Second Circuit.

Argued May 15, 1958.

Decided Aug. 14, 1958.

Mark H. Berger, New York City (Regosin & Edwards, New York City, on the brief), for plaintiff-appellant.

Charles J. Hartenstine, Jr., Sp. Asst. U. S. Atty., Southern District of New York, New York City (Paul W. Williams, U. S. Atty., Southern District of New York, New York City, on the brief), for defendant-appellee.

Before SWAN, HINCKS and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

The sole question presented by this appeal is whether Julius Strupp, who was in Argentina when he was denied an extension of his passport on the ground that he was not a national of the United States, could subsequently bring an action for declaratory judgment of United States nationality under § 360, Immigration and Nationality Act of 1952, 8 U.S. C.A. § 1503, when he was physically within this country. We hold that he may maintain the action and accordingly reverse the order of dismissal below and remand for further proceedings.

Strupp, a native of Germany, alleges that he was naturalized in 1928 as a United States citizen. Since 1947 he allegedly has spent most of his time in South America engaged in business ventures, returning to this country from time to time for periods of from two to six months. On December 20, 1952 plaintiff returned to South America on a United States passport. In January 1953 he applied to consular officials in Uruguay for an extension of his passport. Due to insufficient time to process the application before Strupp left for Argentina, he was advised to seek an extension from the Consulate in Buenos Aires.

The complaint alleges that he applied in Buenos Aires for an extension of his passport on February 2, 1953, but the application was denied on the ground that

he had lost his American nationality by having resided continuously for five years in Argentina and Uruguay. Section 352 (a) (2) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1484(a) (2) provides, with exceptions irrelevant here, that a naturalized citizen shall lose his nationality by continuous residence abroad for five years. On September 21, 1954 a certificate of loss of nationality was executed in Argentina,[1] and after approval by the Department of State, the certificate was transmitted to plaintiff on November 9, 1954. He appealed the issue of the certificate on three separate occasions, allegedly to the Board of Review of the Passport Office, although the government asserts the appeals were to the Board of Passport Appeals of the Department of State. In any event, the

Board, whichever it may be, affirmed the finding of loss of nationality on July 26, 1955, March 5, 1956, and November 26, 1956.[2]

Plaintiff filed this action for a declaratory judgment in December 1956 in the Southern District of New York, pursuant to 8 U.S.C.A. § 1503(a). Contending that plaintiff could not maintain his action unless his claimed rights as a national were denied while he was within the United States, the government moved to dismiss for failure to state a claim upon which relief could be granted. Rule 12 (b) (6), Federal Rules of Civil Procedure, 28 U.S.C.A. The motion was granted and Strupp now appeals.

This appeal turns upon a construction of § 360 Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1503.[3] The

---

1. 8 U.S.C.A. § 1501.

2. Before the district court plaintiff asserted that he was in the United States during the last appeal and offered to amend his complaint to allege this.

3. Sec. 360 [8 U.S.C.A. § 1503] "(a) If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28, United States Code, against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any exclusion proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such exclusion proceeding. An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such case is [hereby] conferred upon those courts.

"(b) If any person who is not within the United States claims a right or privi-

lege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may make application to a diplomatic or consular officer of the United States in the foreign country in which he is residing for a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission. Upon proof to the satisfaction of such diplomatic or consular officer that such application is made in good faith and has a substantial basis, he shall issue to such person a certificate of identity. From any denial of an application for such certificate the applicant shall be entitled to an appeal to the Secretary of State, who, if he approves the denial, shall state in writing his reasons for his decision. The Secretary of State shall prescribe rules and regulations for the issuance of certificates of identity as above provided. The provisions of this subsection shall be applicable only to a person who at some time prior to his application for the certificate of identity has been physically present in the United States, or to a person under sixteen years of age who was born abroad of a United States citizen parent.

"(c) A person who has been issued a certificate of identity under the provisions of subsection (b), and while in possession thereof, may apply for admission to the United States at any port of entry, and shall be subject to all the

government maintains that § 1503(a) requires a person to be within the United States when the claimed right is denied. It argues that the procedures to ascertain nationality established in § 1503(a) and in §§ 1503(b) and (c) are mutually exclusive, and that if a person is denied a claimed right while abroad he is remitted solely to the administrative remedies set out in the latter two subsections of the provision. To permit one such as plaintiff to seek a declaratory judgment, it is contended, would sanction and encourage the circumvention of the orderly procedures established by Congress.

We think the government's position is without support either in legislative history or in statutory policy. While as a matter of grammatical construction § 1503(a) is perhaps susceptible to either of the two interpretations urged upon us, it seems clear that the purpose of the provisions was to foreclose actions by persons only while they were abroad and not when they were actually within the United States.

The Nationality Act of 1940, § 503, 54 Stat. 1171, provided that a person denied a claimed right as a national could institute an action "regardless of whether he is within the United States or abroad * * *" and, if abroad, could obtain a certificate of identity from the local American consul to come to this country to prosecute the action. Concerned about the volume of actions, many of them spurious, brought in the courts and the opportunity afforded those obtaining certificates of identity to come to this country and then disappear. Puig Jiminez v. Glover, 1 Cir., 1958, 255 F.2d 54, 56 and references there cited, Congress in 1952 sharply restricted the jurisdiction of the federal courts to entertain such actions, as well as the class of persons permitted to obtain certificates of identity.

Referring to the jurisdiction of the courts, the Senate Report stated, "The bill modifies Section 503 of the Nationality Act of 1940 by limiting the Court action exclusively to persons who are within the United States." S.Rept. No. 1137, 82d Cong., 2d Sess. 50 (1952). We think it plainly appears that, in so stating the intent of the provision and in light of § 503 of the Nationality Act of 1940, those responsible for the bill believed its only effect was to prevent actions by those not within the country at the time the action was brought. Such an effect, coupled with the restriction of the class to whom certificates of identity might be issued, was deemed desirable to prevent frivolous and fraudulent actions by persons abroad, and to reduce substantially the number of persons traveling to this country under certificates of identity. Neither purpose would be served by denying Strupp, who is within the United States, access to the courts.

The recent opinion of Chief Judge Magruder writing for a unanimous First Circuit Court of Appeals in Puig Jiminez v. Glover, supra is square authority in favor of Strupp's position. It was there held that where the plaintiff is within the United States [4] the district court has jurisdiction of an action for declaratory judgment whether or not the denial of the right occurred in the United States or elsewhere. We agree.

Reversed and remanded.

provisions of this Act relating to the conduct of proceedings involving aliens seeking admission to the United States. A final determination by the Attorney General that any such person is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction in habeas corpus proceedings and not otherwise. Any person described in this section who is finally excluded from admission to the United States shall be subject to all the provisions of this Act relating to aliens seeking admission to the United States."

4. "United States" is defined by 8 U.S.C.A. § 1101(a) (38), for purposes of the Immigration and Nationality Act of 1952, to include Puerto Rico where the plaintiff in Puig Jiminez v. Glover brought her action.