UNITED STATES *v.* GAY.

APPEAL FROM THE COURT OF CLAIMS.

No. 205.    Argued March 11, 1924.—Decided April 7, 1924.

Section 3 of the Act of March 2, 1907, 34 Stat. 1228, in providing that when any naturalized citizen shall have resided for two years in the foreign state from which he came it shall be presumed that he has ceased to be an American citizen, does not apply to a retired officer of the Navy who resided abroad with the permission of the Navy Department, reported to it each year as required by the regulations, evidenced his willingness to respond to the call of duty and performed no act inconsistent with his allegiance or his official status.    P. 356.

57 Ct. Clms. 424, affirmed.

APPEAL from a judgment of the Court of Claims sustaining the claim of a retired warrant machinist in the Navy for pay unlawfully withheld.

*Mr. Assistant Attorney General Lovett,* with whom *Mr. Solicitor General Beck* and *Mr. John G. Ewing* were on the brief, for the United States.

*Mr. George A. King,* with whom *Mr. William B. King* and *Mr. George R. Shields* were on the brief, for appellee.

MR. JUSTICE McKENNA delivered the opinion of the Court.

This appeal is for the review of a judgment of the Court of Claims for the sum of $10,302.52 in favor of the appellee for pay as a machinist on the retired list of the Navy from May 1, 1916, to June 13, 1922, at the rate of $1,687.50 per year.

It is contested by the United States on the ground that Gay had ceased to be an American citizen. For this the Act of March 2, 1907, c. 2534, 34 Stat. 1228, is adduced, and that he, having expatriated himself, abandoned his office as machinist in the Navy, the law and regulations requiring that officers of the Navy must in all cases be American citizens. The further contention is that from the date of abandonment he was not entitled to pay.

The facts are not in dispute. Gay, after serving as an enlisted man in the Navy, was appointed, by warrant of the President, a warrant machinist, the title of which office was changed by subsequent legislation to machinist. He remained on the active list until November 23, 1908, when he was retired from active service on account of deafness.

He was born in Switzerland, May 19, 1856, and was admitted to citizenship August 4, 1897, and has done no act inconsistent with his allegiance nor with his status as an officer of the Navy.

On retirement he was given permission to leave the United States for three successive years, and on August 30, 1912, he was authorized to remain abroad indefinitely. In accordance with the permission, he has been residing in Switzerland, but has kept the Bureau of Navigation informed as to his address as required by the Naval Instructions. He made one or more affidavits of continued American citizenship before the American Consul at Geneva.

He was registered as an American citizen at that consulate and received a registration certificate.   On November 25, 1912, he requested a renewal of his certificate but was informed by the Consul that since he had lived over two years in Switzerland, the country of his birth, he would have to sign an affidavit to overcome the presumption of expatriation.   He signed such affidavit, and on November 26, 1912, he called at the consulate and asked that the affidavit not be sent to the Department of State.

On January 11, 1916, he was notified by letter from the Navy Department that he had been selected for duty in connection with the Naval Intelligence Office in time of war and requested, in case of return to the United States and to Washington, to call at that office, but " should you remain abroad indefinitely, and opportunity offer, it is requested that you confer with the naval attaché at Paris." The letter was transmitted to him through the naval attaché at Paris with request to acknowledge receipt, which he did on January 28, 1916.

On February 24, 1916, the Chief of the Bureau of Navigation of the Navy Department addressed him a copy of General Instructions issued to naval officers abroad directing them to notify the accredited naval attaché of their presence, address and probable length of stay, etc., or if in countries or colonies to which no naval attaché is accredited, to make similar report to the nearest United States naval attaché practicable.

On March 15, 1916, in accordance with this order, he notified the attaché at Paris, giving particulars in regard to his residence, and expressing himself as ready and willing to leave Switzerland whenever recalled to the United States by the Navy Department.

On March 17, 1916, the receipt of the letter was acknowledged, stating, " 2.   In case you are in the vicinity of Paris, I would be greatly obliged if you would call at the embassy in order to receive certain confidential informa-

tion which I have been directed by the Navy Department to furnish you. 3. There is no immediate necessity of your coming to Paris at present."

On June 19, 1916, and again on July 25, 1916, he was notified, by the pay officer of the New York Navy Yard, who had been carrying his accounts and paying his monthly retired pay, that he, the officer, had been directed by the Navy Department to make no further payments to him, Gay.

On September 1, 1916, he wrote to the Chief of the Bureau of Navigation of the Navy Department, Washington, requesting to be informed of the reason for that action, stating that he was ready to answer at any time for his action. No response seems to have been made to his letter. On November 12, 1917, he informed the Bureau of Navigation that he was able to perform sea or shore duty, but in the following month it was officially stated that there was no duty to which he " might be assigned." His name appeared continuously on the official published annual " Register of the Commissioned and Warrant Officers of the Navy and Marine Corps " down to and including that of January 1, 1917. He is carried on it as a machinist on the retired list of the Navy and, under the column " Present Residence or Duty," he is listed "Abroad." It does not appear by what authority his name was omitted from the register.

The contention of the United States is that Gay having resided for over two years in Switzerland, the place of his birth, the presumption occurred that he had ceased to be an American citizen. And this presumption, it is further contended, was not overcome by " the presentation of satisfactory evidence to a diplomatic or consular officer of the United States, under such rules and regulations as the Department of State may prescribe." Section 2 of the Act of March 2, 1907, is cited for the contention. The section provides as follows: " When any naturalized citi-

zen shall have resided for two years in the foreign state from which he came, or for five years in any other foreign state it shall be presumed that he has ceased to be an American citizen, and the place of his general abode shall be deemed his place of residence during said years: *Provided, however,* That such presumption may be overcome on the presentation of satisfactory evidence to a diplomatic or consular officer of the United States, under such rules and regulations as the Department of State may prescribe: *And provided also,* That no American citizen shall be allowed to expatriate himself when this country is at war."

The contention puts out of view all of the other facts of the case—puts out of view the rights of Gay as an officer of the Navy. To be such officer he had to be a citizen, but, being such officer, he had relations and rights besides those of citizenship. And this was recognized—recognized by him, and recognized by the Navy Department. His going and staying abroad was submitted to the judgment and permission of the Department, first in yearly applications for three successive years and then by permission " to remain abroad indefinitely." He reported to the Bureau of Navigation his address each year as required by its regulations. The Department was, therefore, enabled to and did inform him that he had been selected for duty, and directed him to confer with the naval attaché at Paris, which he did, giving particulars in regard to his residence and willingness to respond to a call to duty. To this the attaché responded as follows: " 2. In case you are in the vicinity of Paris, I would be greatly obliged if you would call at the embassy in order to receive certain confidential information which I have been directed by the Navy Department to furnish you. 3. There is no immediate necessity of your coming to Paris at present."

Up to this moment of time, he was an officer in the Navy, one worthy of " confidential information "; and it

is to be remembered that a war was in progress—a war
in which at any time this country might become engaged,
and subsequently did become engaged.   A discontinuance
of his pay came soon after; it was as abrupt as it is unex-
plained, and we are induced to say, inexplicable.   Gay, we
repeat, was an officer of the Navy, and as such he was sub-
ject to duties and as such he was entitled to rights; for
neglect or violation of duty he was subject to reprimand
and, it might be, punishment, but punishment only after
charge and conviction.   §§ 1229 and 1624 Rev. Stats.[1]
This was his right even if there had been culpability in his
actions.   There was none.   We find no act of dereliction
in his retirement nor afterwards.   All was done in sub-
mission to, and under permission granted by, the Navy
Department, in exercise of law.   By that law his case must
be judged.   The Act of March 2, 1907, has other purpose.
That act has only to do with the action of a citizen as
such, having no other relations.   His place of residence
was an element in making him a citizen, it might be re-
garded as an element in continuing him a citizen; and pre-
sumptions could be erected upon it and we are prompted
to say it is a presumption easy to preclude, and easy to
overcome.   It is a matter of option and intention.

The relation of an officer of the Navy to his place of
residence is entirely different.   It is selected in submission
to Navy Regulations, subordinate to his duty, subject to
change; and, that it may be so, he must keep the Bureau

---

[1] Revised Statutes, § 1624, being the Articles for the Government
of the Navy, Article 36 of which provides:  " No officer shall be dis-
missed from the naval service except by order of the President or by
sentence of a general court-martial; and in time of peace no officer
shall be dismissed except in pursuance of the sentence of a general
court-martial or in mitigation thereof."

Article 64 of said Articles for the Government of the Navy pro-
vides that " officers shall mean commissioned and warrant offi-
cers, . . ."

of Navigation informed of it. To these conditions Gay was at all times in conformity.

The finding of the Court of Claims is that: " He has always borne true faith and allegiance to the United States and has done no act inconsistent with his allegiance nor with his status as an officer of the United States Navy."

*Judgment affirmed.*