**VASQUEZ v. BROWNELL, Atty. Gen.**

**Civ. No. 1468.**

United States District Court,
W. D. Texas, El Paso Division.

July 27, 1953.

George A. McAlmon, El Paso, Tex., for plaintiff.

Francis C. Broaddus, Jr., Asst. U. S. Atty., El Paso, Tex., for defendant.

THOMASON, District Judge.

The plaintiff herein filed suit in the nature of a declaratory judgment for a determination that he is now a citizen of the United States, alleging jurisdiction under Section 1503 of Title 8, United States Code Annotated. The Government, acting in defendant's behalf, filed a motion to dismiss for the reason that the complaint failed to state a claim upon which relief could be granted, and for the reason that this Court had no jurisdiction in this matter. Said motion was granted and an order was entered dismissing this cause of action. The defendant's motion alleged that this suit came within the prohibitive wording of the aforementioned Section 1503, which reads as follows: "except that

no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any exclusion proceeding under the provisions of this or any other act, or (2) is an issue in any such exclusion proceeding."

Filed contemporaneously with defendant's motion to dismiss was an affidavit by the Acting District Director of the Immigration and Naturalization Service, El Paso, Texas, stating that the records of the Immigration and Naturalization Service disclose "that the issue as to the status of said Felix Vasquez, plaintiff in the above cause, as a national of the United States, arose for the first time in connection with a hearing before a Board of Special Inquiry at the Port of El Paso, Texas, on October 12, 1951; that nothing in said records indicates or shows that the issue as to plaintiff's status as a national of the United States ever arose or was questioned at any time prior to the aforementioned hearing before the Board of Special Inquiry at El Paso, Texas".

The facts are not disputed and are as follows:

Plaintiff was a native of Mexico who was naturalized in the United States on June 4, 1943 while a member of our Armed Forces. On October 12, 1951, he applied for admission to the United States at El Paso, Texas, and was ordered held for a Board of Special Inquiry. Testimony at this hearing developed the fact that since April 10, 1948, plaintiff had been living and residing in Juarez, Mexico, commuting daily to his employment in El Paso, Texas, continuously until October 12, 1951.[1] No final decision was entered by the Board of Special Inquiry in plaintiff's case on that date, but same was deferred for further evidence. The plaintiff, however, was not

---

1. Section 1484 of Title 8, United States Code Annotated, formerly 8 U.S.C.A. § 804, provides that:

"(a) A person who has become a national by naturalization shall lose his nationality by—

"(1) having a continuous residence for three years in the territory of a foreign state of which he was formerly a national or in which the place of his birth

is situated, except as provided in section 1485 of this title, whether such residence commenced before or after the effective date of this chapter;

"(2) having a continuous residence for five years in any other foreign state or states, except as provided in sections 1485 and 1486 of this title, whether such residence commenced before or after the effective date of this chapter. * * * *"

allowed entry into the United States at that time. The hearing was closed on January 18, 1952, as an abandoned application, inasmuch as the plaintiff had taken no further action in that regard. Subsequent to the aforesaid hearing date, plaintiff entered the United States at El Paso, Texas, on May 18, 1952, by claiming American citizenship. Thereafter, deportation proceedings were instituted against him. The uncontroverted affidavit of the Acting District Director indicates that the information received by the Immigration Service from the Board of Special Inquiry Hearing of October 12, 1951, furnished the basis for the lodging of these deportation charges. The present suit was filed immediately following this action by the Immigration Service.

Since the facts show that no exclusion proceedings are presently in existence or pending, the second exception to jurisdiction under Section 1503 is not relied on. The question for determination here is the construction of the first exception to jurisdiction of the court under the aforementioned statute. This question is apparently before the Courts for the first time, said statute having only recently been passed by Congress.

A review of the history of the statute involved herein sheds much light on the Congressional intention in its passage. Prior to the Nationality Act of 1940, no specific statutory provisions existed for the declaratory judgment procedures to try issues of nationality such as the one presented here.

The leading case of Perkins v. Elg, 1939, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320, allowed a litigant to successfully invoke the general Declaratory Judgment Act of 1934 in matters of this nature. With this exception, however, habeas corpus was the traditional remedy employed by persons claiming to be citizens but who were detained by the Immigration and Naturalization Service. This habeas corpus procedure was vastly limited as to the scope of review and de novo hearings on the nationality feature were wholly denied. The Nationality Act of 1940, 8 U.S.C.A. § 903, radically enlarged the remedy of claimants such as the plaintiff herein. It not only provided for judicial trial and determination, *de novo*, of nationality issues for claimants *within* the United States, but also set up means whereby persons abroad could litigate their claims, and, in some instances, obtain the right to come to this country for such litigation. This statute specifically allowed such de novo hearings, even though an excluding decision of a Board of the Immigration Service had been previously sustained by the Courts on habeas corpus. Mah Ying Og v. McGrath, 1950, 88 U.S. App.D.C. 87, 187 F.2d 199. See also Wong Wing Foo v. McGrath, 9 Cir., 1952, 196 F.2d 120.

The Court is well acquainted with the general world situation which resulted in the recent passage of the McCarran Walter Act, which act substantially amended all Immigration laws, including former Section 903, now Section 1503 of Title 8, United States Code Annotated. Present Section 1503 is obviously more restrictive than the former section and contains the specific exceptions to jurisdiction and right, as heretofore set forth.

The report of the Senate Judiciary Committee investigating the Immigration System showed good cause for amending the prior statute in the use of these words:

"In spite of the definite restrictions on the use and application of Section 503 to bona fide cases, the subcommittee finds that the section has been subject to broad interpretation, and that it has been used in a considerable number of cases, to gain entry into the United States where no such right existed. The subcommittee also feels that the statute should be limited as to time within which such an action may be brought. The subcommittee therefore recommends that the provisions of Section 503 as set out in the proposed bill be modified to limit the privilege to persons who are in the United States, and that any such action shall be brought within 5 years after the finding that the person is not a national of the United States." (Sen.Rep. 1515, 81 Cong., 2d Sess., p. 777).

Accordingly, the proposed Omnibus Bill (S. 3455, 81st Cong., 2d Sess.) which was presented with this report, provided in Section 359 for declaratory judgment of citizenship solely in the cases of persons within the United States and contained no remedy for claimants abroad. When the revised bill was reintroduced as S. 716, 82nd Cong., 1st Sess., it contained the following additional restriction in Section 360:

"* * * except that no such action may be instituted in any case if such person's status as a national of the United States 1) arose by reason of, or in connection with, any *deportation or* exclusion proceeding under the provisions of this or any other Act, or 2) is in issue in any such *deportation or* exclusion proceeding." (Emphasis added.)

As thus revised, the bill would have precluded declaratory judgment relief not only in the cases of claimants outside the United States, but also in the cases of persons in the United States involved in exclusion or deportation proceedings where the question of nationality was in issue. This strict wording, including the words "deportation or" remained in the bill, H. R. 5678, 82nd Cong., 2d Sess., U.S.Code Congressional and Administrative News 1952, p. 166, which passed the Senate and the quoted words were omitted only at the time the bill emerged from conference and was thus finally enacted. This history indicates clearly the Congressional intent to explicitly exclude claims such as that of the plaintiff here in instances where the issue of nationality had previously arisen "by reason of or in connection with any exclusion proceeding".

The direct result of the exclusion hearing at El Paso, Texas, on October 12, 1951, was the filing of deportation charges against plaintiff at the time that he was subsequently found to be within the United States. The evidence is uncontroverted that the issue as to plaintiff's status as a national of the United States arose at no time prior to the aforesaid hearing. To hold here that the issue of plaintiff's nationality did not arise by reason of or in connection with said exclusion hearing would be to reward the plaintiff by his trickery or illegality in obtaining entry into the United States following his denial of entry by a duly authorized Board of Special Inquiry. As the obvious intent of Congress was not to reward persons so evading the administrative processes set forth by law in Immigration matters, defendant's motion, for this reason, must be sustained.

Plaintiff argues that Congress intended to prohibit suits for declaratory judgment of citizenship only when a final exclusion order of a Board of Special Inquiry has been entered. Despite the fact that the exclusion proceeding of October 12, 1951, was eventually discontinued, it cannot be overlooked that the plaintiff was not allowed to enter the United States by that Board and, as has been heretofore pointed out, the issue as to nationality herein definitely arose as a result of this hearing. The statute here excepts these actions in all cases if the issue of nationality arose by reason of or in connection with *any* exclusion proceeding, without limitation as to finality, or otherwise. Its wording is sufficiently broad to cover the case now before the Court and exclude this plaintiff from the type of relief he seeks. However, nothing therein would deprive him from continuing the administrative procedure he once began or from testing any such final administrative decision by the remedy of habeas corpus. It is apparent that this is the procedure Congress intended by using the wording with which the Court is here concerned.

The statute is restrictive of many of the liberal rights heretofore granted to persons in the shoes of this petitioner, but this alone is no basis for ignoring the clear Congressional intent to accomplish exactly that.

Defendant's motion to dismiss is therefore sustained.