Andrew ROSASCO, Plaintiff,

v.

Herbert BROWNELL, Jr., Attorney General of the United States, Defendant.

Civ. No. 16635.

United States District Court
E. D. New York.
June 13, 1958.

William Canton, New York City, for plaintiff.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., for defendant.

Margaret E. Millus, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

ZAVATT, District Judge.

This action and Maria Lagomarsino Rosasco v. Brownell, Civil No. 16636, are separate actions by plaintiffs Andrew Rosasco (hereafter referred to as Andrew) and Maria Lagomarsino Rosasco (hereafter referred to as Maria) which have been consolidated for the purposes of trial because of common questions of law and fact. This decision will dispose of both cases.

Maria was born in Italy in November, 1890 and first came to the United States in June, 1909, where she married Andrew Rosasco, Sr. in July, 1909. At the time of the marriage Andrew Rosasco, Sr. was an Italian citizen. He became an American citizen by naturalization on April 8, 1916, and it is conceded that Maria thereby derived American citizenship by virtue of the Act of February 10, 1855, R.S. § 1994 [1]. Maria and her husband resided in the United States continuously from the date of their marriage until 1921. In that year Maria and her husband went to Italy, where Maria remained continuously until 1950. In 1925 Andrew Rosasco, Sr., unaccompanied by Maria, traveled to the United States on on American passport. He returned to Italy in the same year. It appears that while he was in this country during that year his American passport expired and that he returned to Italy upon an Italian passport when an American passport for which he had applied was not issued to him immediately. There is evidence that there was urgency about his returning to Italy at this time, and counsel for the plaintiffs claims that an American passport was issued to him subsequently, but there is no evidence as to this. Andrew Rosasco, Sr. remained continuously in Italy from the date of his return to Italy in 1925 to 1950.

Plaintiff Andrew is the son of Maria and Andrew Rosasco, Sr., and was born in Genoa, Italy, on September 3, 1928. If his father was an American citizen at the time of Andrew's birth, Andrew derived American citizenship by virtue of Section 1993 of the Revised Statutes [2].

In 1950, Maria and her husband traveled to the United States on separate Italian passports, the arrangements for which had been made by the husband. Andrew Rosasco, Sr. was the owner of some real property in this country which

---

1. "Any woman who is now or may hereafter be married to a citizen of the United States, and who might herself be lawfully naturalized, shall be deemed a citizen * * *"

2. Providing before amendment by the Act of May 24, 1934 (48 Stat. 797), "All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose fathers were or may be at the time of their birth citizens thereof are declared to be citizens of the United States; but the rights of citizenship shall not descend to children whose fathers never resided in the United States."

had been managed by his brother under a power of attorney. The purpose of the trip in 1950 was to straighten out some business matters in connection with this property. The couple remained in this country for five months on this trip and then returned to Italy because of the severe illness of Andrew Rosasco, Sr. It is perhaps significant that at the time of his illness Andrew Rosasco, Sr. desired to be with his family in Italy. He died in Italy on March 19, 1952.

Maria testified that during the period of her residence in Italy she held herself out to be an American citizen[3]. She did not vote in Italy. On cross-examination she stated that she and her husband were not interned as enemy aliens during World War II; that she obtained a ration book during the war, but that its issuance was not restricted to citizens of Italy; and that neither she nor her children born in Italy were registered as American citizens at a consulate of the United States. The Government offered nothing to show that there was a requirement that Maria or her children be so registered. Andrew Rosasco owned real property in Italy, and at the time of his death owned no property, real or personal, in the United States.

Andrew came to the United States in June, 1952, upon an Italian passport. As will be set forth below, he commenced his efforts to come to this country in August, 1951. Andrew returned to Italy in June, 1952 because of the death of his father. He has not served in the Italian army, nor has he voted in an Italian election.

Maria commenced her current stay in the United States on August 30, 1953. She traveled to this country upon an Italian passport, and was admitted as a nonimmigrant visitor on a nonimmigrant visa for a temporary period of six months. Andrew's current stay was begun on September 16, 1953. He traveled to the United States upon an Italian passport, and was admitted as a nonimmigrant visitor on a nonimmigrant visa for a temporary period of three months. Since their arrival here in 1953, both of them have executed a number of applications to extend the time of their temporary stay and have made the following statements in such applications:

"My foreign residence which I have no intention to abandon is * * * Genova, Italy * * *"

"I am a citizen or subject of Italy * * *"[4]

Maria testified that her last trip to the United States was made for the purpose of visiting friends and that her house and furniture in Italy have been rented to someone.

Both plaintiffs now seek the declaratory judgment of this court that they are citizens of the United States, and ask

---

3. She testified that she used her kitchen and raised her children "the American way"; that there was an American flag "by the bed"; that there was a flagstaff with a globe and eagle on the roof of her home, and that the children were taught English "because we all had the idea to come back".

4. The following evidence bears upon the statements contained in these applications. Maria testified that she did not fill out the papers; that she did not read the questions at any time, and that she did not know what the questions were; she testified at one point that she had a lawyer help her fill out the applications, and later that she did not know who filled out the applications. Andrew testified that he received the assistance of a lawyer in the prepara-

tion of the application for the first extension, and that he subsequently made copies of this which he signed and mailed off. He testified that he could not understand the application too well, although he can read English. In this regard it should be noted that Andrew has taken a course in law at the University of Genoa which he has not completed, and that he has had the following education: Five years' elementary school, three years' Lycee, three years' study of law in college. Andrew testified that he can read English, and with regard to his answers on the applications, "I had to say that because they would send me right back to Italy, that's where I don't want to go."

Inconsistencies in Maria's testimony are ascribed by the court to her difficulty with the English language.

that the court order that the Attorney General issue certificates of citizenship to them. The complaints allege that the jurisdiction of the court is invoked pursuant to Section 360 of the Immigration and Nationality Act of 1952, 8 U.S.C.A § 1503 [5]. Andrew alleges that in 1951 he attempted to obtain a passport as an American citizen at the American Consulate in Genoa, Italy, and that "the American Consulate refused to recognize plaintiff as a citizen of the United States". He further alleges that in 1954 he applied to the Immigration and Naturalization Service of the Department of Justice for a certificate of citizenship and that such a certificate was denied in 1956 "on the grounds that the plaintiff had failed to establish that he was of the class of persons to whom a certificate of citizenship may be issued". Maria's complaint contains a like allegation of the denial of a certificate of citizenship to her in 1956. Her complaint was amended upon the trial to allege that in 1953 she attempted to obtain a passport as an American citizen at the American Consulate in Genoa, Italy, "and that the American Consulate refused to recognize plaintiff as a citizen of the United States".

There appears to be no dispute, and the court is satisfied, that in 1954 the plaintiffs, while in the United States as temporary visitors, claimed certificates of citizenship from the Immigration and Naturalization Service of the United States Department of Justice, which claims were denied in 1956, while the plaintiffs were in the same status, upon the ground that they were not nationals of the United States. I find, however, that Andrew has failed to prove that in 1951 he was denied a claimed right to a passport at the American Consulate in Genoa upon the ground that he was not a national of the United States.[6] As to Maria the record is likewise insufficient to establish that she was denied a passport at the American Consulate in Genoa in 1953 upon the ground that she was not a national of the United States. Nonetheless, it will be assumed for the purpose of the following discussion that

5. Subsection (a) providing: "If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28, against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any exclusion proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such exclusion proceeding. An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts."

6. Andrew testified that he had doubts about whether he could have an American passport, and went to the American Consulate in Genoa to ask for one. The only person he saw at the Consulate was a Mr. Arreghine, who was the individual one had to see before seeing the Consul or Vice-Consul. He asked Mr. Arreghine if he had any right to an American passport, and was informed that the only way he could come to this country was with an Italian passport. He did not make a written application for a passport. The State Department has certified that it has no record of an application for a passport by Andrew in or about 1951. While there is some question as to whether the denial of an informal passport application will give rise to an action herein (see Dulles v. Richter, 1957, 101 U.S.App.D.C. 22, 246 F.2d 709, where the Secretary of State admitted advising the plaintiff that she was not entitled to a passport), the record is devoid of evidence to establish that Andrew claimed a right as a national of the United States, and that such right was denied him upon the ground that he was not a national. Fong Nai Sun v. Dulles, D.C.S.D.Cal.1953, 117 F. Supp. 391.

the denial of all four of the claimed rights on the statutory grounds has been established by the plaintiffs. Such being the case, the court is immediately faced with serious questions concerning its jurisdiction:

(1) Concerning the assumed denial of a passport to Maria in 1953, may this denial in Italy of the claimed right of a national be the basis of an action for declaratory judgment under 8 U.S.C.A. § 1503(a)?

(2) Was the denial of certificates of citizenship to both plaintiffs, who were physically within the United States in 1956, the denial of "a right or privilege as a national of the United States" within the comprehension of said subsection?

(3) If so, were the plaintiffs, as temporary visitors in a nonimmigrant status, persons "within the United States" within the meaning of said subsection?

(4) Concerning the assumed denial of a passport to Andrew in 1951, may this denial in Italy of the claimed right of a national be the basis of an action for declaratory judgment under either 8 U.S.C.A. § 1503(a) or Section 503 of the Nationality Act of 1940, 8 U.S.C. § 903 (1946 ed.)?

### The Jurisdiction of the Court

■ (1) A denial of a passport application of Maria in Italy in 1953 upon the ground that she was not a national of the United States cannot serve as the basis of a suit for declaratory judgment under 8 U.S.C.A. § 1503(a). For such an action to lie the denial of the claimed right or privilege must have occurred within the United States and not prior to entry into the United States. Ferretti v. Dulles, D.C.E.D.N.Y.1957, 150 F.Supp. 632, affirmed, 2 Cir., 1957, 246 F.2d 544; D'Addino v. Dulles, D.C.E.D.N.Y.1954, 136 F.Supp. 417; Strupp v. Dulles, D.C.S.D.N.Y.1957, 163 F.Supp. 790; Aiko Matsuo v. Dulles, D.C.S.D.Cal.1955, 133 F.Supp. 711; Correia v. Dulles, D.C.R.I.1954, 129 F.Supp. 533. The court is aware that Puig Jiminez v. Glover, 1 Cir., 255 F.2d 54, permits an action under § 1503(a) where the claimed denial took place outside of the United States. But there it appeared that plaintiff's permanent residence was in Puerto Rico, and that she was "within the United States" upon a Spanish quota immigrant visa. I agree with the conclusion stated by Judge Palmieri in Strupp that the result reached in Puig Jiminez represents a justifiable exception from the general rule, in favor of quota immigrants. In any event, the decision in Puig Jiminez is tempered by the fact that the plaintiff was denied a claimed right as a national while within the United States subsequent to the claimed denial in Spain, and the court there noted that the action could be grounded upon this second denial "if it is necessary to read into § 360(a) the additional requirement that an act of denial of the claimant's right or privilege as a citizen must have taken place within the United States".

■ (2) The denial of certificates of citizenship to the plaintiffs who were physically within the United States in 1956 was the denial of a claimed right or privilege of a national of the United States upon the ground that plaintiffs were not nationals of the United States, within the comprehension of 8 U.S.C.A. § 1503(a). See 9 U.S.C.A. § 1452; Laranjo v. Brownell, D.C.N.D.Cal.1954, 126 F.Supp. 370; Cepo v. Brownell, D.C.N.D.Cal.1956, 147 F.Supp. 517. While greater clarity of pleading may have been desired, the uncontroverted allegations of the complaints that the plaintiffs in 1954 applied for certificates of citizenship which were denied in 1956 upon the grounds that plaintiffs "had failed to establish" that they were "of the class of persons to whom a certificate of citizenship may be issued", when considered with the uncontroverted evidence that the plaintiffs were within the United States during this period, are sufficient to state claims for declaratory judgments. Cf. Ferretti v. Dulles, 2 Cir., 1957, 246 F.2d 544.

■ (3) A troublesome question in this case is whether one who suffers a denial outside of the United States and

who journeys to the United States as a temporary visitor, and who then suffers a subsequent denial of a claimed right of citizenship while in the United States, may sue under 8 U.S.C.A. § 1503(a), i. e., is such person "within the United States" within the meaning of said subsection. Aliens are defined as persons not citizens or nationals of the United States. 8 U.S.C.A. § 1101(a) (3). Aliens are divided into two main classes, immigrants and nonimmigrants. 8 U.S.C. A. § 1101(a) (15). Immigrants seek entry for permanent residence and may become citizens, while nonimmigrants desire to spend limited or unlimited time in the United States, but do not contemplate and are not entitled to acquire United States nationality. Among the classes of nonimmigrants are temporary visitors, who have a residence in a foreign country which they have no intention of abandoning and who intend to visit the United States temporarily for business or for pleasure. 8 U.S.C.A. § 1101(a) (15) (B). Aliens applying for admission to this country as temporary visitors must show that they are generally eligible to enter the United States, that they have a residence in a foreign country which they have no intention of abandoning, that they intend to remain in the United States temporarily, and that they intend in good faith and will be able to depart from the United States at the expiration of their temporary stay. See Besterman, Commentary on the *Immigration and Nationality Act,* 8 U.S.C.A. page 1 at pages 36–37. It

is in such status that the plaintiffs came to and are now in this country.

The provisions of 8 U.S.C.A. § 1503(a) have already been set forth. Subsection (b) is a correlative provision with respect to persons not within the United States.[7] Subsection (c) provides that a final determination by the Attorney General that any person who has been issued a certificate of identity under the provisions of subsection (b) is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction in habeas corpus proceedings and not otherwise. It is the position of the defendant that Andrew had a remedy under these subsections with regard to the denial of a passport alleged to have taken place in Italy, and with this view I express my agreement. The defendant further must maintain that the plaintiffs, in a temporary visitor status, have no standing to sue under subsection (a) on the basis of the denials of rights which have taken place within this country. The cases upon which the defendant relies are inapposite to the extent that they involved only the alleged denial of rights outside of the United States.[8] In Orlassino v. Dulles, D.C.E.D.N.Y.1955, 136 F. Supp. 255, not cited by either party, the plaintiff entered the United States in a nonimmigrant status for business reasons and there were denials both without and within the United States. Judge Rayfiel there sustained the complaint, *but the defendant did not raise the ob-*jection that the plaintiff had no stand-

7. "If any person who is not within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may make application to a diplomatic or consular officer of the United States in the foreign country in which he is residing for a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission. * * * The provisions of this subsection shall be applicable only to a person who at

some time prior to his application for the certificate of identity has been physically present in the United States, or to a person under sixteen years of age who was born abroad of a United States parent."

8. Ficano v. Dulles, D.C.E.D.N.Y.1954, 151 F.Supp. 650; Ferretti v. Dulles, D.C. E.D.N.Y.1957, 150 F.Supp. 632, supra, and Strupp v. Dulles, supra. In Vasquez v. Brownell, D.C.W.D.Tex.1953, 113 F.Supp. 722, the plaintiff was not a temporary visitor but had entered the United States through trickery or illegality.

ing to sue in a nonimmigrant status, and it does not appear that Judge Rayfiel properly had this question before him. His decision turned solely upon the question of whether the plaintiff had been denied a right within or without the United States. In Correia v. Dulles, D.C.R.I.1955, 133 F.Supp. 442, which also involved denials both in and outside of the United States, the plaintiff entered the United States as a non-quota immigrant, and this fact is sufficient to distinguish this case from the case at bar. In Puig Jiminez v. Glover, supra, the plaintiff likewise had status as a quota immigrant.

The only case which the court has found which is squarely in point with the facts of the instant actions is Basma Abed Harake v. Dulles, D.C.E.D.Mich. 1958, 158 F.Supp. 413. It was alleged there that in 1955 the plaintiff had been denied an American passport in Lebanon, and was advised that a Certificate of Loss of Nationality had been issued without prior notice to her. She thereupon traveled to the United States on a Lebanese passport and temporary visitor's visa. After being admitted to this country she applied for an American passport which was denied by the Department of State in 1956. She thereupon sued for a declaratory judgment of nationality under 8 U.S.C.A. § 1503(a). On motion, the court dismissed the complaint on the ground that plaintiff had no right to bring the action, even though she may have been legally within this country. The court held that § 1503(a) must be considered in conjunction with subsections (b) and (c); that it is clear that Congress intended persons outside the United States, whose rights and privileges as nationals of the United States have been denied, to follow the procedures outlined in subsections (b) and (c); and that a person outside the United States who claims such a denial should not be allowed to circumvent the procedures for relief established for such persons by subsections (b) and (c) by the simple expedient of obtaining a temporary visa to the United States on a foreign passport and then, after being admitted to the United States as an alien visitor, claiming the privileges granted to persons within the United States by § 1503(a).[9] While I cannot agree with the court's reliance upon the Ficano and Ferretti cases as squarely supporting the conclusion reached in Harake, I am constrained to concur with the result therein. Section 503 of the Nationality Act of 1940 [10] granted the right to sue for declaratory judgment of United States nationality to a rejected claimant of the rights or privileges thereof, regardless of whether such claimant was within the United States or abroad. The legislative history of the 1952 Act reveals a legislative determination that § 503 of the Act of 1940 had been subjected to broad interpretation, and that it had been used in a considerable number of cases to gain entry into the United States where no right to do so existed. It was the intent of Congress to modify § 503 of the Act of 1940 by limiting court action exclusively to persons who are within the United States

9. It is worthy of mention that upon appeal of Ferretti v. Dulles, 2 Cir., 1957, 246 F.2d 544, the Court of Appeals noted that the plaintiff did not resort to the administrative remedies provided in subsections (b) and (c) of § 1503, and that not having exhausted her administrative remedies, the plaintiff's effort to obtain judicial review of agency action was premature. See also Strupp v. Dulles, supra, Avina v. Brownell, D.C. S.D.Tex.1953, 112 F.Supp. 15.

10. 8 U.S.C. § 903 (1946 ed.), providing: "If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency, or executive official thereof, upon the ground that he is not a national of the United States, such person, regardless of whether he is within the United States or abroad, may institute an action against the head of such Department or agency in the District Court of the United States for the District of Columbia or in the district court of the United States for the district in which such person claims a permanent residence for a judgment declaring him to be a national of the United States * * *"

and to require, through § 1503(b) and (c), that the determination of the nationality of persons eligible for certificates of identity be made in accordance with "normal immigration procedures", with provision for review by habeas corpus proceedings "where the issue of the nationality status of the person can be properly adjudicated". See Sen.Rep. 1515, 81 Cong., 2nd Sess., p. 777; Sen. Rep. 1137, 82 Cong., 2nd Sess., p. 50. Congress thus wiped out the provisions of § 503 of the Act of 1940 providing for judicial determination of the rights of persons outside of the United States and substituted therefor an administrative determination, subject to judicial review only on habeas corpus. See Avina v. Brownell, supra, note 9.

■■ It should be obvious that to permit the plaintiffs, who have entered this country as temporary visitors and have secured the formal rejection of a claimed right of citizenship while here, to sue in the first instance for a declaration of citizenship under 8 U.S.C.A. § 1503(a) would be to permit them to evade the statutory plan and to frustrate the legislative purpose. While the facts and law should be construed as far as reasonably possible in favor of one claiming an existing citizenship, see Chin Chuck Ming v. Dulles, 9 Cir., 1955, 225 F.2d 849, 852–853, the court may not set an undesirable precedent and reward one who has secured his entry into this country and who has maintained his presence here by what he must now vigorously assert were representations made to evade the requirements of the law. For to gain entry as temporary visitors the plaintiffs had to represent that they had no intention of abandoning their foreign residence and that they intended in good faith to depart from the United States at the expiration of their temporary stay. These plaintiffs, in fact, represented that they were citizens or subjects of Italy. They may not now take the position that such representations were necessary means to a desired end, for such is not the system of the law under which we operate. Accordingly, I hold that the plaintiffs have no standing to sue under § 1503(a).

■ (4) What has been said with regard to the assumed denial of a passport to Maria in Italy in 1953 (point (1) above), applies with equal force to any denial of such "right or privilege" to Andrew in Italy in 1951. A further point must be examined. Although Andrew's complaint alleges that this action arises and is brought pursuant to Section 360 of the Act of 1952, 8 U.S.C.A. § 1503, the contention is raised for the first time in a memorandum filed more than a month after the trial that the rights of Andrew are to be judged by the provisions of the Nationality Act of 1940. It is contended that the operation of Section 405 of the Act of June 27, 1952 [11] preserves to Andrew the right to proceed with an action for declaratory judgment pursuant to Section 503 of the Nationality Act of 1940, 8 U.S.C. § 903 (1946 ed.).[12] Andrew's complaint was filed on June 19, 1956. The Act of June 27, 1952 became effective on December 24, 1952, § 407, 8 U.S.C.A. § 1101 note, and Section 503 of the Act of 1940 was repealed by § 403(a) (42) thereof, 66

---

11. 8 U.S.C.A. § 1101 note: "(a) Nothing contained in this Act unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing liability (sic) obligation or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes (sic), conditions, rights, acts, things, liabilities, obligations, or matters or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect * * "

12. Note 10, supra.

Stat. 280. A number of the cases have held that an action grounded upon Section 503 of the Act of 1940 must be instituted before the effective date of the Act of 1952 in order for the savings clause therein, which preserved only substantive rights, to be operative. Aiko Matsuo v. Dulles, D.C.S.D.Cal.1955, 133 F.Supp. 711; Correia v. Dulles, D.C.R.I. 1954, 129 F.Supp. 533; Avina v. Brownell, supra, n. 9; cf., Junso Fujii v. Dulles, 9 Cir., 1955, 224 F.2d 906; Hitaka Suda v. Dulles, 9 Cir., 1955, 224 F.2d 909; Wong Ark Kit v. Dulles, D.C.Mass.1955, 127 F.Supp. 871; see Ng Gwong Dung v. Brownell, D.C.S.D.N.Y.1953, 112 F.Supp. 673. Dulles v. Richter, 1957, 101 U.S. App.D.C. 22, 246 F.2d 709 upon which plaintiff relies, holds to the contrary that a cause of action arising under Section 503 of the Act of 1940 is preserved by the savings clause of the Act of 1952, so that 8 U.S.C.A. § 1503 is applicable only where a cause of action arises after the effective date of the Act of 1952. The same court had also held in Wong Kay Suey v. Brownell, 1955, 97 U.S.App.D.C. 26, 227 F.2d 41, certiorari denied 1956, 350 U.S. 969, 76 S. Ct. 439, 100 L.Ed. 841, an exclusion proceeding, that this savings clause preserves after the effective date of the 1952 Act a right which a person obtained under the 1940 Act to sue for a declaratory judgment for determination of the issue of his citizenship. The Court of Appeals for this Circuit in Ferretti v. Dulles, supra, referred to this question but left it unanswered. I am of the view that the right afforded by Section 503 of the Act of 1940 was a right only as to remedy which terminated upon the repeal of that section and the substitution therefor of the remedies provided by Section 360 of the Act of 1952, and that for an action under the 1940 Act to be sustained it must have been commenced prior to the repeal thereof. A contrary holding would provide alterna-

tive remedies for one who claims to have been denied a right while abroad prior to December 24, 1952, and would provide different remedies in the case of a person whose denial occurred prior to that date than in the case of one who has suffered the denial of a right after that date. This would not accord with the Congressional intent to substitute an administrative determination, reviewable only by habeas corpus, of the status of persons claiming the denial of rights or privileges as nationals outside of the United States.

■ Finally, the plaintiffs' contention that the Declaratory Judgments Act, 28 U.S.C.A. § 2201, provides a remedy under which they can proceed is groundless, the Court of Appeals in Ferretti v. Dulles, supra, having stated that the Declaratory Judgments Act does not by itself provide a remedy, but rather creates new procedural remedies without enlarging the jurisdiction of the federal courts. See also Fletes-Mora v. Brownell, 9 Cir., 1955, 231 F.2d 579; but see Tom Mung Ngow v. Dulles, D.C.D.C. 1954, 122 F.Supp. 709; Puig Jiminez v. Glover, supra.

Despite the fact that the court has no jurisdiction in these two actions, it is considered advisable in this instance to go forward and state what would have been the findings and conclusions of the court with respect to the substantive questions herein.

With regard to Andrew the following questions have been presented:

(1) Did Andrew Rosasco, Sr. expatriate himself prior to the birth of his son by being naturalized in a foreign state in conformity with its laws, as stated in paragraph 1, Section 2, Act of March 2, 1907, 34 Stat. 1228?[13]

(2) Did Andrew Rosasco, Sr. expatriate himself by residing in Italy subsequent to 1921 and prior to the birth of his son?[14]

13. Paragraph 1 provided: "That any American citizen shall be deemed to have expatriated himself when he has been naturalized in any foreign state in conformity with its laws * * *"

14. Paragraph 2, Section 2 of the Act of March 2, 1907 provided: "When any naturalized citizen shall have resided for two years in the foreign state from which he came, or for five years in any

The defendant contends that Andrew did not acquire American citizenship at birth. There is no contention that if Andrew was born a citizen he subsequently expatriated himself.

The following questions are presented with regard to Maria:

(1) Did Maria expatriate herself by being naturalized in a foreign state in conformity with its laws, as stated in paragraph 1, Section 2, Act of March 2, 1907?

(2) Did Maria expatriate herself by residing in Italy subsequent to 1921, under either paragraph 2, Section 2, Act of March 2, 1907, or Section 404 of the Nationality Act of 1940?[15]

### The Substantive Questions

It was established on behalf of the defendant that, under Article IX(3) of the Italian Law of Citizenship of June 13, 1912, a person who lost Italian citizenship by virtue of acquiring American citizenship and who returned to Italy in 1921 would reacquire such lost Italian citizenship according to Italian law without affirmative action upon his part. It has been held elsewhere, however, that in order to make such Italian citizenship effective there must be some act evidencing an intention to reacquire it. Barsanti v. Acheson, D.C.Mass.1952, 103 F.Supp. 1011, affirmed 1 Cir., 1953, 200 F.2d 562; see United States v. Cuccaro, D.C.E.D.N.Y.1956, 138 F.Supp. 847.

With regard to the effect to be ascribed to the second paragraph of Section 2 of the Act of March 2, 1907, providing that when any naturalized citizen shall have resided for two years in the foreign state from which he came it shall be presumed that he has ceased to be an American citizen, the cases are in conflict. A number of cases have held that this section did not effect expatriation without a valid proceeding to cancel citizenship; that the presumption of the section could be invoked by the Government only as against a naturalized citizen who asserted a claim to diplomatic protection of some sort after residing abroad for the period set forth in the section, i. e., that the purpose of the statute was simply to relieve the Government of the obligation to protect such citizens residing abroad after the limit of two or five years as the case may be. Garcia Laranjo v. Brownell, D.C.N.D.Cal.1954, 126 F.Supp. 370; Rueff v. Brownell, D.C.N. J.1953, 116 F.Supp. 298; In re Alfonso, D.C.D.N.J.1953, 114 F.Supp. 280; see Camardo v. Tillinghast, 1 Cir., 1928, 29 F.2d 527, 28 Ops.Atty.Gen. 504. On the other hand, there are cases to the effect that the statute creates a presumption that one ceases to be an American citizen, i. e., that the failure to rebut the presumption thus created results in the expatriation of a naturalized citizen. Zimmer v. Acheson, 10 Cir., 1951, 191 F.2d 209; United States ex rel. Anderson v. Howe, D.C.S.D.N.Y.1956, 231 F. 546; Schaufus v. Attorney General, D.C. Md.1942, 45 F.Supp. 61; see Nurge v. Miller, D.C.E.D.N.Y.1923, 286 F. 982

other foreign state, it shall be presumed that he has ceased to be an American citizen, and the place of his general abode shall be deemed his place of residence during said years: *Provided, however,* That such presumption may be overcome on the presentation of satisfactory evidence to a diplomatic or consular officer of the United States, under such rules and regulations as the Department of State may prescribe: *And provided also,* that no American citizen shall be allowed to expatriate himself when this country is at war."

15. 8 U.S.C.A. § 804 (1946 ed.) now 8 U.S.C.A. § 1484(a) providing: "A person who has become a national by naturalization shall lose his nationality by:

"(a) Residing for at least two years in the territory of a foreign state of which he was formerly a national or in which the place of his birth is situated, if he acquires through such residence the nationality of such foreign state by operation of the law thereof; or

"(b) Residing continuously for three years in the territory of a foreign state of which he was formerly a national or in which the place of his birth is situated, except as provided in section 806 hereof.

"(c) Residing continuously for five years in any other foreign state, except as provided in Section 806 hereof."

**56**

(presumption rebutted); Sinjen v. Miller, D.C.Neb.1922, 281 F. 889, affirmed Miller v. Sinjen, 8 Cir., 1923, 289 F. 388 (presumption rebutted; on appeal the Circuit Court assumed without deciding that the Act operated to expatriate, but indicated that the contrary view might be followed if presumption had not been found to have been rebutted). It does not appear that it has been necessary for the Supreme Court to face this issue, although in a number of cases there has been language by way of passing which sheds light upon the effect of the Act of 1907. In United States v. Gay, 1924, 264 U.S. 353, 44 S.Ct. 388, 68 L.Ed. 728, it was contended by the Government that Gay had ceased to be an American citizen and, hence, was not entitled to pay as a machinist in the Navy from the date of abandonment of his citizenship. The Court held that Gay's status must be judged by the law governing officers of the Navy and not by the Act of March 2, 1907 which "has only to do with the action of a citizen as such, he having no other relations. His place of residence was an element in making him a citizen, it might be regarded as an element in continuing him as a citizen and presumptions could be erected upon it, and we are prompted to say it is a presumption easy to preclude, and easy to overcome. It is a matter of option and intention. The relation of an officer of the Navy to his place of residence is entirely different." In Mandoli v. Acheson, 1952, 344 U.S. 133, 73 S.Ct. 135, 137, 97 L.Ed. 146, the court spoke of the Act of 1907 as "limiting the *presumption of expatriation* from foreign residence to the case of naturalized but not of native-born citizens". (Emphasis added.) In Perez v. Brownell, 1958, 356 U.S. 44, 78 S.Ct. 568, 576, 2 L.Ed.2d 603, the court, tracing the history of the Expatriation Acts, stated, "we cannot ignore the fact that embarrassments in the conduct of foreign relations were of primary concern in the consideration of the Act of 1907, *of which the loss of nationality provisions of the 1940 Act are a codification and expansion*". (Empha-

sis added.) And in Nutsugi Nishikawa v. Dulles, 1958, 356 U.S. 129, 78 S.Ct. 612, 617, 2 L.Ed.2d 659, the Chief Justice referred to the section in question as "analagous" to Section 402 of the Nationality Act of 1940. In view of these statements I am forced to conclude that the correct view is that stated by those cases which hold to the effect that the presumption of the Act of 1907 operated to deprive naturalized Americans of their citizenship and was not limited in effect to the matter of diplomatic protection abroad.

 The presumption under the Act of March 2, 1907 is easy to preclude and easy to overcome. United States v. Gay, supra; Nishikawa v. Dulles, supra. With regard to the burden of proof in cases of this nature, the following rules govern: The plaintiff must establish prima facie that he is a citizen of the United States. Perez v. Brownell, supra. The Government must then prove an act which shows expatriation by clear, convincing and unequivocal evidence. Nishikawa v. Dulles, supra; Augello v. Dulles, 2 Cir., 1955, 220 F.2d 344; Monaco v. Dulles, 2 Cir., 1954, 210 F.2d 760. Voluntariness is an element of the expatriating act, and as such must be proved by the Government. If voluntariness is not put in issue the Government makes its case simply by proving the objective expatriating act. Nishikawa v. Dulles, supra.

 The evidence showed that in 1921 Maria and her husband went to Italy because Andrew Rosasco, Sr. had apparently been working very strenuously and needed a rest. When the couple arrived in Italy Mr. Rosasco's mother and Maria's father were sick. The couple lived continuously in Italy, the country of their birth and former nationality, until the death of Andrew Rosasco, Sr. in 1952. In 1925 Andrew Rosasco, Sr. traveled to the United States on an American passport and, it is admitted by counsel for plaintiffs, returned to Italy the same year upon obtaining an Italian passport after he could not immediately obtain the American passport for which

he had applied. It appears that a hurried return at this time was occasioned by the illness of Maria's parents. Assuming that Andrew Rosasco, Sr.'s act of traveling to the United States in 1925 upon an American passport sufficiently evidences an intention to remain an American citizen so as to rebut the presumption created by the Act of 1907, and assuming further that he was compelled to obtain an Italian passport for his return to Italy because of the exigencies of time, there is nonetheless a continuous period of residence by Andrew Rosasco, Sr. and Maria in Italy from 1925 to September, 1928, the month of the birth of Andrew, during which there arose the presumption that they ceased to be American citizens. Despite the fact that this presumption may be easily rebutted, there is no evidence upon which the court can base a finding that it has been so rebutted. To be sure, there was a period of some thirty-one years' foreign residence on the part of Maria and her husband which must be regarded as fortifying the presumption thus created. Accordingly, I find that at the time of the birth of Andrew his father and mother had ceased to be American citizens, and consequently he did not derive American citizenship by virtue of Section 1993 of the Revised Statutes.[16] Believing as I do that the effect of paragraph 2, Section 2 of the Act of March 2, 1907 created a rebuttable presumption of expatriation when a naturalized citizen resided for two years in the foreign state from which he came, it is unnecessary to determine whether Maria or her husband performed any acts evidencing an intention to reacquire Italian citizenship under the Italian law. Capetan v. Brownell, D.C.E.D.N.Y., 148 F.Supp. 519; Battaglino v. Marshall, 2 Cir., 1949, 172 F.2d 979; and Antonacci v. Brownell, D.C.S.D.Ill.1955, 133 F.Supp. 201, cited by the defendant, and In re Bolter, D.C. S.D.Cal.1946, 66 F.Supp. 566, and In re Findan, D.C.D.R.I.1933, 4 F.Supp. 189, cited by the plaintiffs, are all cases involving the effect of a *judgment* cancelling a parent's citizenship upon the rights of nationality derived by children, and as such are inapposite to the problem at bar.

Although Maria lost her nationality under the provisions of the Act of 1907, it appears that Section 404 of the Nationality Act of 1940 [17] would have had the effect of expatriating her had she been a citizen at the time it was in force. Its provisions would have taken effect, barring the applicability of an exception, merely through residence abroad and the lapse of time.[18] United States ex rel. Lapides v. Watkins, 2 Cir., 1948, 165 F.2d 1017; Lapides v. Clark, 1949, 85 U.S.App.D.C. 101, 176 F.2d 619, certiorari denied 1949, 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527; Scibilia v. Dulles, D.C.E.D.N.Y.1956, 141 F.Supp. 47; United States v. Cuccaro, supra. Of course, expatriating conduct of any type must be engaged in voluntarily. Nishikawa v. Dulles, supra, but that is not to say that a person, in order to lose her citizenship, must intend to do so. Perez v. Brownell, supra; cf., Savorgnan v. United States, 1950, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287; Revedin v. Acheson, 2 Cir., 1952, 194 F.2d 482, certiorari denied 1952, 344 U.S. 820, 73 S.Ct. 17, 97 L.Ed. 638.

Maria argues that during the lifetime of her husband, being a feme

16. In arriving at this conclusion the court has given no weight to defendant's exhibit 4, the "application" and "affidavit" executed by Andrew Rosasco, Sr. in 1952, nor to any of the certificates attached thereto, nor to any of the statements which appear in the exhibit. The court believes that the circumstances surrounding the execution of these statements and the physical condition of Andrew Rosasco, Sr. were such that the statements were not made voluntarily or knowingly, and accordingly no credence is given thereto.

17. Supra, note 15.

18. Section 403 (8 U.S.C. § 803, 1946 ed.) now 8 U.S.C.A. § 1483 provided: "The loss of nationality under this Act shall result solely from the performance by a national of * * * the conditions specified in this Act."

covert, she was bound by her husband's choice of domicile; and that her return to Italy was not as a free agent in the sense that her actions were voluntary. She argues that as a dutiful and obedient wife she could not do otherwise than to remain with her husband in Italy. The cases cited for this proposition in no way sustain the contention, for none relates to the question of the incapacity of femes covert to expatriate themselves. The argument is specious in that it assumes that Maria's remaining with her husband during his stay abroad was an act against her will and one which she did not voluntarily elect. From the evidence, and from observation of the plaintiff, the court can reject this hypothesis as ill-grounded. I am aware of no case holding that a wife's obligation to remain with her husband abroad, if such is, in fact, the law,[19] excuses the performance by her of an expatriating act on the ground that such act is not voluntary. If the sole act of marriage to a foreigner may be regarded "as voluntary and distinctive as expatriation" so that its consequences must be considered as elected, MacKenzie v. Hare, 1915, 239 U.S. 299, 36 S.Ct. 106, 108, 60 L.Ed. 297, there is no reason why residence abroad with one's husband should not be so regarded.

Counsel appears to argue in his brief that World War II tolled the operation of the expatriation statute as to Maria; that the effect of the statute could not commence until 1948; and that by such time Maria's husband had become ill so that she came within the terms of Section 406(e) of the Act of 1940.[20] Actually Section 409 of the Act of 1940, as amended, provided that nationality should not be lost under Section 404 of the Act until the expiration of six years following October 14, 1940. It is the finding of this court that Andrew Rosasco, Sr. ceased to be a national of the United States by September, 1928. In any event, the Act of 1940 tolled expatriation by reason of the war only until October, 1946. There is no evidence that Maria's husband was ill at this time. Rather, it is the fact that in 1950 Maria and her husband visited the United States (traveling on Italian passports), and returned to Italy because he became ill at that time. Furthermore, this is not a case such as Mendelsohn v. Dulles, 1953, 93 U.S.App.D.C. 93, 207 F.2d 37, or Ryckman v. Acheson, D.C.S.D.Tex.1952, 106 F.Supp. 739, where the action of one forced to live abroad with an ailing spouse or parent has been held to have been involuntary, for regardless of the seriousness of Andrew Rosasco, Sr.'s illness, and the compulsion that his wife be with him at this time, such illness has not been shown to have commenced prior to the time Maria would have been expatriated under the Act of 1940.

It must, therefore, be concluded that Andrew Rosasco, Sr. expatriated himself by residence in Italy subsequent to 1921 and prior to the birth of his son, so that his son was not born a citizen of the United States; and that Maria expatriated herself by residence in Italy subsequent to 1921, under either the Act of March 2, 1907, or the Nationality Act of 1940.

Two points remain, neither of which has been raised by the parties, and which the court will dispose of in passing:

(1) Section 360(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1503(a) provides for an action for

---

19. In none of the cases cited by the plaintiff was there involved the question of a wife's duty to remain with her husband who had gone abroad.

20. 8 U.S.C. § 806 (1946 ed.) now 8 U.S.C.A. § 1485; "Subsections (b) and (c) of section 804 [of this title] shall have no application to a person:
 * * * * *

"(c) Who is residing abroad on account of ill health.
 * * * * *
"(e) Who is the wife, husband, or child under twenty-one years of age of, and is residing abroad for the purpose of being with, an American citizen spouse or parent who is residing abroad for one of the objects or causes specified in section 805 [of this title] or subsections (a), (b), (c), or (d) hereof."

declaratory judgment such as this against the head of the department or agency which has denied one who is within the United States a claimed right as a national of the United States, upon the ground that such person is not a national of the United States. It would appear, with regard to the claimed denial of passports to the plaintiffs in Italy, that the Secretary of State is an indispensable party to an action for declaratory judgment based upon such denial. Here, only Mr. Brownell, the former Attorney General, has been named as defendant.

(2) The court notes that Mr. Brownell resigned the position of Attorney General of the United States on October 24, 1957, subsequent to the trial of this action, and that Mr. William P. Rogers was sworn in as his successor on November 8, 1957. Rule 25(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that upon the resignation of an officer of the United States during the pendency of an action to which he is a party, the action may be continued and maintained against his successor, if within six months after the successor takes office it is satisfactorily shown to the court that there is a substantial need for so continuing and maintaining it. Rule 6(b) provides that the court may not extend the time for taking any action under Rule 25. There has never been any action by the plaintiffs to substitute Mr. Rogers as the defendant in this action. The Government has not moved to dismiss the action on this ground. There is some question as to whether the plaintiffs could at this time amend their complaints to name Mr. Rogers as defendant. See Acheson v. Fujiko Furusho, 9 Cir., 1954, 212 F.2d 284; Poindexter v. Folsom, 3 Cir., 1957, 242 F.2d 516; Lew Thun v. McGrath, D.C.S.D.N.Y.1954, 16 F.R.D. 352; contra Rossello v. Marshall, D.C.S.D.N.Y.1952, 12 F.R.D. 352. It is enough that this problem be stated. In view of the fact that the issue has not been raised by the Government, and in light of the disposition of these cases which I have previously indicated, it is not necessary that this matter be resolved.

The foregoing will constitute the findings of fact and conclusions of law of the court. The complaints will be dismissed without costs to the defendant. I am constrained to state that it is with a feeling of personal regret that I have arrived at the foregoing conclusions, for personal observation of the plaintiffs at the trial of these causes has led me to believe that it is in the best interests of our nation that two such desirable individuals be admitted to our citizenry. It is unfortunate that I am powerless to effectuate this result. Private legislation to bestow citizenship upon the plaintiffs would undoubtedly be a beneficent and commendable step. Short of this, it is to be hoped that the plaintiffs will persevere in taking the steps necessary to place themselves in such a status that they will be able to become naturalized citizens in due course.

The attorney for the defendant will settle an appropriate judgment.